# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2808

_____

| | | |
|---|---|---|
| St. Charles County, State of Missouri, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| State of Wisconsin, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: February 15, 2006
Filed: May 16, 2006

_____

Before LOKEN, Chief Judge, BOWMAN and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

St. Charles County, Missouri, ("the County") filed this action against the State of Wisconsin to collect $5,421.86 in expenses that St. Charles County allegedly incurred for jailing a Wisconsin fugitive pending extradition. Wisconsin subsequently moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and the district court[1] granted the motion. The County appeals, arguing that the Federal Extradition Act , 18 U.S.C. § 3181 et seq., grants this court jurisdiction to

_____

[1]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

determine whether Wisconsin failed to comply with the Act and to order any available remedy to the County for such failure. We affirm.

## I. *Background*

Jill Knutowski fled from Wisconsin to Missouri in violation of her probation. About a month later, she was arrested and incarcerated in the County. Wisconsin sought to extradite Knutowski under the Act. The County detained Knutowski for 83 days pending extradition and then released her into the custody of an agent of Wisconsin. The County requested $4,150.00—$50.00 per day—from Wisconsin for housing Knutowski. Also, the County demanded $1,271.86 for Knutowski's medical expenses while she was in custody. Wisconsin declined to pay the $5,421.86, and the County brought suit to recover the expenses, citing 18 U.S.C. § 3195 for subject matter jurisdiction.

The district court granted Wisconsin's motion for judgment on the pleadings, holding that the Act did not provide the County with a right of action and, even if it did, the Eleventh Amendment would bar such a claim.

## II. *Discussion*

On appeal, the County argues that § 3195[2] of the Act establishes a cause of action for a county seeking to recover extradition costs and expenses from a demanding jurisdiction, such as Wisconsin. Wisconsin responds that the Eleventh Amendment is a jurisdictional bar to suits against states by counties in federal courts because Congress did not expressly abrogate the states' sovereign immunity in the Act. In the alternative, Wisconsin argues that even if Congress abrogated the states' sovereign immunity, such abrogation is invalid because Congress lacks the power to abrogate the states' sovereign immunity in the Act.

---

[2]Section 3195 provides that "[a]ll costs or expenses incurred in any extradition proceeding in apprehending, securing, and transmitting a fugitive shall be paid by the demanding authority."

Because we consider it dispositive of the appeal, we first address whether the Eleventh Amendment bars this suit. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Thus, while the Eleventh Amendment does not bar suits between states, a county is a "Citizen of another State" for Eleventh Amendment purposes. *Illinois v. City of Milwaukee*, 406 U.S. 91, 97 (1972).

We note that the Second and Tenth Circuits have come to conflicting conclusions as to whether the Act establishes a cause of action by which a county may recover its extradition costs.[3] However, because we find the Eleventh Amendment bars such an action, we need not address the issue.

When Congress exercises its power to abrogate the Eleventh Amendment without the states' consent, it must express its intention "in unmistakable language in the statute itself." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 243 (1985).[4] The

---

[3]The Second Circuit held that the Act provides a cause of action in federal court to a county against a state to recover extradition costs. *County of Monroe v. Florida*, 678 F.2d 1124, 1128 (2d Cir. 1982). In contrast, the Tenth Circuit held that the Act does not provide a cause of action to a county with a cause of action against a state to recover extradition costs because only the executive authority of the state has the right to recover extradition expenses. *Colfax County Bd. of County Comm'r v. New Hampshire*, 16 F.3d 1107, 1109–10 (10th Cir. 1994).

[4]The United States Supreme Court recently carved out an exception to the general rule that Congress must expressly abrogate states' sovereign immunity. In the case of bankruptcy, it is "not necessary [for Congress] to authorize the Bankruptcy Court's jurisdiction" because, in ratifying the Bankruptcy Clause, the states "agreed in the plan of the Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to 'Laws on the subject of Bankruptcies.'" *Cent. Va. Comm. Coll. v. Katz*, 126 S. Ct. 990, 995, 1004 (2006). The Court indicated

Second Circuit acknowledged that "the Federal Extradition Act does not expressly abrogate the states' Eleventh Amendment immunity." *County of Monroe*, 678 F.2d at 1133. However, despite the lack of express abrogation, the Second Circuit found that the "plain language of s 3195 and its legislative history reveal an intent by Congress to require the demanding state to pay the expenses of extradition" and that the Act has a history focusing directly on the issue of state liability. *Id.* It found that if the Act does not authorize suits by counties against states, then it is "rendered virtually meaningless." *Id.* at 1134. In addition, the court noted that "a somewhat lesser quantum of congressional intent to abrogate the immunity" is necessary when the "the financial consequences of abrogating states' immunity are not particularly severe." *Id.*

We read the Act, congressional intent, and Supreme Court precedent somewhat differently. Regarding abrogation, the Court has stated:

> Our opinion in *Atascadero* should have left no doubt that we will conclude Congress intended to abrogate sovereign immunity only if its intention is "unmistakably clear in the language of the statute." Lest *Atascadero* be thought to contain any ambiguity, we reaffirm today that in this area of the law, evidence of congressional intent must be both unequivocal and textual. Respondent's evidence is neither. In particular, we reject the approach of the Court of Appeals, according to which, "[w]hile the text of the federal legislation must bear evidence of such an intention, the legislative history may still be used as a resource in determining whether Congress' intention to lift the bar has been made sufficiently manifest." Legislative history generally will be irrelevant to a judicial inquiry into whether Congress intended to abrogate the Eleventh Amendment. If Congress' intention is "unmistakably clear in

that this exception for bankruptcy cases is a narrow one, stressing that "the Bankruptcy Clause's unique history, combined with the singular nature of bankruptcy courts' jurisdiction," persuaded the Court that "the ratification of the Bankruptcy Clause does represent a surrender by the States of their sovereign immunity in certain federal proceedings." *Id.* at 1000 n.9. Because this is not a bankruptcy case, this narrow exception does not apply.

the language of the statute," recourse to legislative history will be unnecessary; if Congress' intention is not unmistakably clear, recourse to legislative history will be futile, because by definition the rule of *Atascadero* will not be met.

*Dellmuth v. Muth*, 491 U.S. 223, 230 (1989) (internal citations omitted). Given this guidance, we hold that the Eleventh Amendment bars the instant suit because Congress did not expressly abrogate the states' sovereign immunity in the Act.

Congress may not use its powers under Article I to abrogate the states' sovereign immunity from suit in federal courts. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 64–65 (1996). However, when it acts pursuant to the Fourteenth Amendment, Congress has the power to abrogate the states' sovereign immunity. *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 637 (1999). Therefore, "'appropriate' legislation pursuant to the Enforcement Clause of the Fourteenth Amendment could abrogate state sovereignty." *Id*. To determine whether an Act may be viewed as "remedial or preventive legislation aimed at securing the protections of the Fourteenth Amendment," a court must "first identify the Fourteenth Amendment 'evil' or 'wrong' that Congress intended to remedy, guided by the principle that the propriety of any § 5 legislation must be judged with reference to the historical experience it reflects." *Id*. at 640 (internal quotations and citation omitted).[5]

Here, the County argues that "Section 3195 could be properly interpreted as a mechanism by which the protections of the Fourteenth Amendment are extended to [the County] to protect it from the unconstitutional deprivation of property occasioned by the demand of Wisconsin to hold and extradite one of its fugitives." We do not so interpret § 3195. Congress's 1793 enactment of the Extradition Act stated no intent to

---

[5]As noted in footnote 4, states' sovereign immunity is also abrogated in "proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Cent. Va. Comm. Coll.*, 126 S. Ct. at 1005.

abrogate the states' sovereign immunity through the Fourteenth Amendment because the Act's passage predated the Fourteenth Amendment by 75 years.

Finally, we "turn [ ]to the question whether [Wisconsin's] sovereign immunity, though not abrogated, was voluntarily waived." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999). Sovereign immunity is a privilege that the state holds, which it may voluntarily waive. *Id*. However, the "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Id*. (internal quotations and citation omitted). A state only waives its sovereign immunity "if the State voluntarily invokes [federal] jurisdiction, or else if the State makes a clear declaration that it intends to submit itself to [federal] jurisdiction." *Id*. at 675–76 (internal quotations and internal citations omitted). Therefore, "the State's consent [must] be unequivocally expressed." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). We hold that Wisconsin never expressly consented to being sued in federal court and that constructive waiver of sovereign immunity is not permitted. *Coll. Sav. Bank*, 527 U.S. at 680.

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____