STATE OF MINNESOTA

IN SUPREME COURT

A14-2065

Workers' Compensation Court of Appeals                                    Gildea, C.J.

David J. Mach, Jr.,

        Respondent,

vs.

Wells Concrete Products Co., and CCMSI,

        Relators,

and                                                                    Filed:  July 22, 2015
                                                                    Office of Appellate Courts

Blue Cross Blue Shield, Operating Engineers
Local 49 Health & Welfare Fund,

        Intervenors.

_____

Eric W. Beyer, Falsani, Balmer, Peterson, Quinn & Beyer, Duluth, Minnesota, for respondent.

Janet Monson, Amy M. Mahowald, Aafedt, Forde, Gray, Monson & Hager, P.A., Minneapolis, Minnesota, for relators.

_____

S Y L L A B U S

        1.       A claim for payment of medical expenses incurred to treat a work-related injury is not barred by res judicata if the right to seek reimbursement for those expenses had not arisen at the time of the previously denied claim.

1

2. A claim for payment of medical expenses incurred to treat a work-related injury is not barred by collateral estoppel if the facts establish that the employee's condition has changed since the time of the previously denied claim.

Vacated and remanded.

O P I N I O N

GILDEA, Chief Justice.

We are asked to determine whether res judicata or collateral estoppel bars respondent's workers' compensation claim. The compensation judge concluded that the claim was barred, but the Workers' Compensation Court of Appeals ("WCCA") reversed. We agree that res judicata does not apply, but because we conclude that whether collateral estoppel bars respondent's claim depends on whether his condition has changed, we vacate the decision of the WCCA and remand to the compensation judge.

This action arises from an injury that respondent David J. Mach sustained to his left leg while employed by Wells Concrete Products Co. ("Wells"). Mach was working as a crane operator when an auger on the back of a skid steer detached and struck Mach in the left leg. There is no dispute that the injury was work-related, resulted in lasting pain, and required medical treatment. Mach experienced chronic pain and discomfort after the injury, and underwent significant medical treatment, including MRIs, physical therapy, knee surgery, and dozens of evaluations.

In August 2010 Mach sought compensation under the workers' compensation laws. He filed a claim petition seeking disability benefits and compensation for medical expenses ("2010 claim"). Most relevant here, Mach claimed that as a result of his work

2

injury, he developed reflex sympathetic dystrophy ("RSD"), now known as complex regional pain syndrome ("CRPS"), and that he was entitled to compensation for medical expenses, including expenses incurred for the implantation of a spinal cord neurostimulator. Mach also claimed temporary partial disability benefits from June 7, 2010 through September 20, 2010, temporary total disability benefits from September 21, 2010 through the date of the hearing, and permanent partial disability benefits due to his CRPS. Wells admitted that Mach suffered an injury in the course of his employment but denied that Mach had CRPS, that the neurostimulator was compensable medical treatment, and that Mach had any restrictions on his work activities.

The compensation judge determined that some of the disputed medical bills, including those for an x-ray, an MRI, and several clinic visits, were reasonable and necessary treatment for Mach's injury, and awarded compensation for those expenses. But the judge concluded that Mach failed to show that he suffered from CRPS and that the neurostimulator was a reasonable medical treatment for Mach's work injury. The judge rejected the medical opinion of Mach's doctor, who had recommended placement of the neurostimulator, and instead adopted the opinions of two independent medical examiners, who had concluded that Mach did not have CRPS and that a neurostimulator was not a reasonable or necessary treatment. The judge therefore denied Mach's claims

3

for treatment related to the neurostimulator.[1]  The WCCA affirmed this denial.  *Mach v. Wells Concrete Prods. Co.*, 72 Minn. Workers' Comp. Dec. 91, 107 (WCCA 2012).

Mach subsequently underwent surgery to remove his neurostimulator and replace it with a new one.  Mach filed a second request for medical benefits on October 7, 2013, seeking compensation for the expenses related to the replacement ("2013 claim").  To support his 2013 claim, Mach submitted a letter from Dr. Paul J. Vollmar, who began treating Mach on January 16, 2012.  Dr. Vollmar concluded that Mach "has and continues to have complex regional pain syndrome of the left leg" and that this condition "is directly related to the [work] injury."  Dr. Vollmar said that Mach "has [a] spinal cord stimulator in place which will need to be periodically interrogated by a manufacturer's representative and reprogrammed.  Since this is a battery operated electronic unit at some point in the future it will probably need to be revised or replaced."

Wells moved to dismiss the 2013 claim, arguing that Mach's claim for benefits was barred by res judicata and collateral estoppel.  Specifically, Wells argued that the 2013 claim was barred because the necessity of a spinal cord neurostimulator had already

---

[1]     As to the disability ratings, the compensation judge denied Mach's claim for total temporary disability benefits, finding that any inability to work after September 21, 2010 was due to either a low-back condition unrelated to Mach's work injury, or to Mach's personal wishes.  The judge also denied Mach's claim for permanent partial disability, finding that Mach had failed to establish the CRPS criteria necessary for a permanency rating.  The judge granted Mach's claim for temporary partial disability benefits from June 7, 2010 to September 20, 2010.  The WCCA affirmed the denial of temporary total and permanent partial disability benefits and vacated the award of temporary partial disability benefits after Mach conceded on appeal that he could not prove that his physical condition was the cause of his wage loss during that period.  *Mach v. Wells Concrete Prods. Co.*, 72 Minn. Workers' Comp. Dec. 91, 105, 108 (WCCA 2012).

4

been considered and rejected by the compensation judge and the WCCA. The compensation judge granted the motion to dismiss. The judge determined that the removal and replacement of the neurostimulator "represent[ed] maintenance and/or a continuation of treatment found non-compensable" by the litigation of Mach's 2010 claim. The judge concluded that Mach "failed to show in the previous proceedings that the implant of the Medtronic pain stimulator" was related to his work injury, and therefore held that an attempt to relitigate that issue with a new claim for benefits was barred by res judicata and collateral estoppel.

The WCCA reversed. *Mach v. Wells Concrete Prods. Co.*, 2014 WL 6472040, at *3 (Minn. WCCA Nov. 4, 2014). The court held that "Dr. Vollmar's bills were not before the judge in [the 2010 claim] and are therefore not precluded by the previous decision." *Id.* The court noted that none of the compensation judge's findings on the 2010 claim established that Mach's work injury was temporary, had healed, or had resolved. *Id.* Because those "findings and order covered only claims for medical expenses prior to January 5, 2011, and the current claim is for medical expenses from and after January of 2012," the court held that Mach's 2013 claim was not barred by res judicata or collateral estoppel. *Id.* The court therefore remanded the 2013 claim to the compensation judge for a determination on the merits. *Id.* Wells petitioned for certiorari review under Minn. Stat. § 176.471 (2014).

5

I.

The appeal involves res judicata and collateral estoppel. As related doctrines, res judicata and collateral estoppel are sometimes used interchangeably, even though each doctrine has a distinct effect. *Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. 2004). The application of the doctrine of res judicata is a question of law that we review de novo. *Care Inst., Inc.-Roseville v. Cty. of Ramsey*, 612 N.W.2d 443, 446 (Minn. 2000). The application of collateral estoppel is a mixed question of law and fact that we also review de novo. *Id.*

The workers' compensation system in Minnesota is a creature of statute. *See* Minn. Stat. ch. 176 (2014). The statutes do not address res judicata or collateral estoppel.[2] But we have held that "principles of res judicata" apply to workers' compensation proceedings. *Westendorf v. Campbell Soup Co.*, 309 Minn. 550, 550-51, 243 N.W.2d 157, 158 (1976). We have also recognized that these principles do not preclude the litigation of claims and issues that were not specifically decided in a prior proceeding. *See id.* at 550-51, 243 N.W.2d at 158; *Fischer v. Saga Corp.*, 498 N.W.2d 449, 450 (Minn. 1993). With this background in mind, we turn to an analysis of whether either res judicata or collateral estoppel precludes Mach's 2013 claim.

---

[2] Minnesota Statutes § 176.461 provides a right for either party to reopen and seek modification of a workers' compensation award. Mach does not ask to set aside any part of the decision on his 2010 claim; rather, he seeks an award of compensation for new medical expenses, a scenario which chapter 176 does not expressly address. Wells also does not seek to set aside an award, because Mach received only an award of past medical expenses in the first proceeding. Accordingly, section 176.461 is not applicable here.

II.

We first consider whether res judicata precludes Mach's 2013 claim. Alternately called "claim preclusion" or "merger and bar," res judicata is a finality doctrine that applies "when a subsequent action or suit is predicated on the same cause of action," or claim, that has been previously determined by a judgment. *Hauser v. Mealey*, 263 N.W.2d 803, 806 (Minn. 1978). A subsequent claim is precluded when "a prior claim involved the same cause of action, there was a judgment on the merits, and the claim involved the same parties or their privies." *Nelson v. Am. Family Ins. Grp.*, 651 N.W.2d 499, 511 (Minn. 2002). A cause of action or claim is "a group of operative facts giving rise to one or more bases for suing." *Hauschildt*, 686 N.W.2d at 840 (quoting *Martin ex rel. Hoff v. City of Rochester,* 642 N.W.2d 1, 9 (Minn. 2002)). Claims are not considered the same cause of action if "the right to assert the second claim did not arise at the same time as the right to assert the first claim." *Care Inst., Inc.*, 612 N.W.2d at 447. The common test for determining whether an action is precluded is to determine "whether the same evidence will sustain both actions." *McMenomy v. Ryden*, 276 Minn. 55, 58, 148 N.W.2d 804, 807 (1967). Additionally, "the party against whom res judicata is applied must have had a full and fair opportunity to litigate the matter in the prior proceeding." *Nelson*, 651 N.W.2d at 511. Res judicata is not applied rigidly but is a "flexible doctrine" in which "the focus is on whether its application would work an injustice on the party against whom estoppel is urged." *Johnson v. Consol. Freightways, Inc.*, 420 N.W.2d 608, 613-14 (Minn. 1988).

Mach's claim for reimbursement of medical expenses is precluded by res judicata only if it involves the same claim or cause of action that was previously decided. Mach's 2013 claim seeks compensation for the implantation of a spinal cord neurostimulator; the compensation judge denied a claim for similar medical treatment in the 2010 claim. The WCCA correctly noted, however, that the findings and order in the 2010 claim covered only a claim for expenses incurred for treatment received prior to January 5, 2011. *Mach*, 2014 WL 6472040, at \*3. Mach's 2013 claim is for expenses incurred for treatment received in January 2012 or later.[3] *Id.* Specifically, Mach's 2013 claim includes an April 18, 2012 procedure to replace his neurostimulator. Logically, Mach could not have requested reimbursement for these 2012-and-beyond treatment expenses in the 2010 claim, because the procedure had not yet occurred and the expenses had not been incurred.

In the context of the workers' compensation system, these differences preclude application of res judicata. This is so because employers have ongoing liability for treatment of work-related injuries. That liability continues until the effects of an injury are cured or symptoms are relieved. *See* Minn. Stat. § 176.135, subd. 1(a) ("The

---

[3] Because his previous claims were denied, Mach has no current disability rating and is not receiving income benefits under Minn. Stat. § 176.101, and his current claim does not allege that he should receive such benefits. Minnesota Statutes § 176.135, subd. 1(a), however, provides that an employer must furnish an employee with treatment to "cure and relieve from the effects of the injury." Nothing in the statute requires an employee to be receiving disability benefits in order to be compensated for ongoing medical expenses incurred to cure and relieve the effects of an injury. *See* 8 Arthur Larson et al., *Larson's Workers' Compensation Law* § 94-01[3] (Matthew Bender rev. ed. 2015) ("[I]t seems clear that liability for medical benefits should not be diminished by the fact that, for some reason, income benefits are not payable.").

employer shall furnish" care and treatment "as may reasonably be required at the time of the injury and any time thereafter to cure and relieve from the effects of the injury."); *see also Gamble v. Twin Cities Concrete Prods.*, 852 N.W.2d 245, 248 (Minn. 2014) (noting that an employer is responsible for ongoing medical treatment if the employee sustains an injury arising out of and in the course of employment and medical treatment is reasonably required to cure and relieve the effects of the injury). Mach's 2013 claim—that as of 2012 he needed a procedure to replace his neurostimulator to cure and relieve the effects of his work injury—falls within the scope of the employer's ongoing statutory liability for medical treatment. As *Larson's Workers' Compensation Law* states, "[i]t is almost too obvious for comment that res judicata does not apply if the issue is the claimant's physical condition or degree of disability at two entirely different times." 12 Arthur Larson et al., *Larson's Workers' Compensation Law* § 127.07[7] (Matthew Bender rev ed. 2015).

Because Mach's 2013 claim is for treatment expenses incurred after the previous decision, the operative facts are not the same, and different evidence supports each claim. The 2013 claim, therefore, is not the same as Mach's 2010 claim for purposes of res judicata, and we hold that res judicata does not preclude Mach's 2013 claim.

III.

Even if not precluded by res judicata, Mach's claim may still be precluded by collateral estoppel. Collateral estoppel, also called "issue preclusion," applies to specific *issues* that have previously been adjudicated. *Hauschildt*, 686 N.W.2d at 837. Under this doctrine, "once a court has decided an issue of fact or law necessary to its judgment, that

9

decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Collateral estoppel applies to matters that were necessarily determined in a previous judgment, "irrespective of whether the subsequent action is predicated upon the same or a different cause of action." *Hauser*, 263 N.W.2d at 806. Collateral estoppel applies when: "(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue." *Nelson*, 651 N.W.2d at 511 (quoting *Willems v. Comm'r of Pub. Safety*, 333 N.W.2d 619, 621 (Minn. 1983)). Like res judicata, we "do not apply collateral estoppel rigidly," but focus on whether an injustice would be worked upon the party against whom the estoppel is urged. *Id.* The party asserting collateral estoppel has the burden to establish that "the issue was actually presented and necessarily determined in the earlier action." *Lange v. City of Byron*, 255 N.W.2d 226, 228 (Minn. 1977).

There is no dispute that the prior workers' compensation adjudication on Mach's 2010 claim was a final judgment, involved the same parties, and that Mach had a full and fair opportunity to be heard. The only question is whether the issues are identical. *See Nelson*, 651 N.W.2d at 511.

In the 2010 claim, the compensation judge determined that a spinal cord neurostimulator was not reasonable medical treatment necessitated by Mach's work injury. As part of that determination, the compensation judge found that Mach had failed to show that he suffered from CRPS. Wells argues that the same issue—whether a

neurostimulator represents reasonable medical treatment necessitated by a work injury—is presented by Mach's 2013 claim, in which he again seeks compensation for a spinal cord neurostimulator to treat CRPS. Mach argues, on the other hand, that the issues are not identical because "the benefits claimed are for a different period of time." He argues that the compensation judge erred when he failed to consider Dr. Vollmar's explanation for why a neurostimulator was reasonable in 2012 or whether there was any "change in circumstances." In essence, Mach argues that the reasonableness of neurostimulator treatment in 2010 is a different issue than the reasonableness of neurostimulator treatment in 2012, because the conditions relevant to the determination of reasonableness may change or worsen over time, and that therefore collateral estoppel does not apply.

Mach's assertion finds support in the ongoing nature of an employer's liability in workers' compensation cases to provide all medical treatment necessary at the time of the injury "and any time thereafter" in order to "cure and relieve" the employee from the effects of the injury. Minn. Stat. § 176.135, subd. 1(a). The compensation judge in the 2010 claim did not find that Mach was cured or that the effects of his injury were relieved; rather, the judge found that Mach did not have CRPS and that a neurostimulator was not reasonable or necessary treatment for his injury. Mach's argument suggests that the effects of his injury may have changed and that treatment that was not reasonable and necessary at the time of the 2010 claim may now be reasonable and necessary.

We recognized a similar principle in the context of a workers' compensation claim for disability benefits in *Saenger v. Liberty Carton Co.*, 316 N.W.2d 737 (Minn. 1982). There, we held that a previous determination that an employee was not totally disabled,

11

but had voluntarily retired and withdrawn from the labor market, did not preclude the employee from later showing that a substantial change in his condition thereafter had left him totally disabled. *Id*. at 739. We held that finality principles applied "only to the factual determinations that, as of [a previous date, the] employee was not totally disabled and had then retired and voluntarily withdrawn from the labor market." *Id.* These principles did not, however, "preclude [the] employee from showing that since that date he has become totally disabled and that at some point after [the previous date], but prior to becoming totally disabled he decided again to obtain gainful employment." *Id.*;[4] *see also Lindberg v. J & D Enters.*, 543 N.W.2d 90, 90 (Minn. 1996) ("[W]hat is required is proof of the actual existence of a disability during the period of time for which benefits are claimed.").

We reach the same conclusion in this case. Just as in *Saenger*, collateral estoppel does not apply to bar a claim for reimbursement of medical expenses for treatment received when an employee's medical condition has changed. The compensation judge, in denying the 2010 claim, determined that Mach had failed to show that the effects of his work-related injury included CRPS and therefore necessitated a neurostimulator. Absent a change of condition or new facts, Wells should not be forced to undertake the expense

---

[4]   We recognize that our decision in *Saenger* speaks in terms of res judicata. 316 N.W.2d at 738-39. The analysis nevertheless applies to our discussion of collateral estoppel because the employee in *Saenger* attempted to show that the *issue* of whether he was totally disabled at a later date had not been litigated because his condition had changed. *Id.*; *see Hauschildt*, 686 N.W.2d at 837 (noting that res judicata and collateral estoppel are sometimes used interchangeably).

of relitigating the matter and collateral estoppel would bar the 2013 claim.[5] But in resolving the 2013 claim, the compensation judge did not determine whether Mach's medical condition has changed or new material facts have emerged, and we cannot discern the answer to that question based on the record before us.[6] Because this determination is necessary in order to resolve whether collateral estoppel precludes Mach's 2013 claim, further proceedings are required. We therefore vacate the decision of the WCCA and remand to the compensation judge for further proceedings consistent with this opinion.

Vacated and remanded.

---

[5] Although the burden is on the employee to prove that he is entitled to benefits, *Fischer v. Saga Corp.*, 463 N.W.2d 501, 501 (Minn. 1990), the burden is on the employer to prove the affirmative defense of collateral estoppel, *City of Byron*, 255 N.W.2d at 228.

[6] Mach did not directly argue to our court that his condition had changed since the hearing on his 2010 claim. But in the letter attached to Mach's medical request, Dr. Vollmar noted some symptoms that, according to the compensation judge's findings on the 2010 claim, were not observed by the doctor who prescribed Mach's original neurostimulator. These symptoms include changes in skin color, temperature, and motor disability. The relevance of these changes can be determined in the proceedings on remand.