Martin T. BREAKER, Appellant,

v.

BEMIDJI STATE UNIVERSITY, et al., Respondents.

A16-1606

Court of Appeals of Minnesota.

Filed June 12, 2017

Gregg M. Corwin, Joshua M. Erspamer, Gregg M. Corwin & Associate Law Office, P.C., St. Louis Park, Minnesota (for appellant).

Lori Swanson, Attorney General, Janine Kimble, Assistant Attorney General, St. Paul, Minnesota (for respondents)

Considered and decided by Bratvold, Presiding Judge; Kirk, Judge; and Toussaint, Judge.*

## OPINION

BRATVOLD, Judge

Appellant challenges the district court's dismissal of his claims against respondent, a state university and his former employer. In 2011, appellant sued respondent in tort, citing USERRA violations. USERRA requires state employers to promptly reemploy employees upon completion of military service, prohibits discrimination against employees based on their military status, and provides for exclusive state jurisdiction over private damages claims against state employers. 38 U.S.C. §§ 4301(a)(1)–(3), 4323(b)(2) (2016). The

district court dismissed appellant's first lawsuit, and this court affirmed. *Breaker v. Bd. of Trs., Minn. State Colls. & Univs. (Breaker I)*, No. A11-2286, 2012 WL 2874038 (Minn. App. July 16, 2012), *review denied* (Minn. Sept. 25, 2012). In April 2012, while the *Breaker I* appeal was pending, the Minnesota Legislature enacted a new law that permitted plaintiffs to bring civil actions against the state for USERRA violations. 2012 Minn. Laws ch. 192, § 1, at 1 (codified at Minn. Stat. § 1.05, subd. 5).

In this case, appellant sued respondent for violating USERRA based on the same factual circumstances supporting his tort claim in *Breaker I*. Appellant argues the district court erred when it applied res judicata because he did not receive a full and fair opportunity to litigate his USERRA claims in *Breaker I*. More specifically, appellant asserts that his USERRA claims would have been barred in *Breaker I* because sovereign immunity precluded USERRA claims until legislative changes were made in 2012, which occurred after *Breaker I* was dismissed. We conclude that the district court erred and, therefore, reverse and remand for additional proceedings.

## FACTS

Between 1997 and 2005, appellant Martin Breaker was a faculty member at respondent Bemidji State University (BSU),[1] working as an assistant professor and program coordinator in the business department. In 2005, the U.S. Army Reserve called Breaker into active military duty. In 2008, Breaker notified BSU that he intended to return to work. According to the complaint, BSU informed Breaker that his

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. Minnesota State Colleges and Universities is also a respondent. *See* Minn. Stat. § 136F.10 (2016) (designating BSU as member of Minnesota State Colleges and Universities).

prior positions had been eliminated and offered him a temporary fixed-term teaching position. Breaker declined because the position was "at a lesser rate of pay, status, seniority, opportunity, and in a different location than the one that [he] held prior to his military service."

In 2011, Breaker, proceeding as a self-represented litigant, sued BSU, the State of Minnesota, Minnesota State Colleges and Universities, and several individual defendants in state court, claiming intentional infliction of emotional distress. *See Breaker I*, 2012 WL 2874038. The complaint alleged that the defendants engaged in extreme and outrageous conduct by failing to rehire Breaker in a position similar to that which he held before deployment. *Id.* at *1. Although the complaint alleged USERRA violations, Breaker did not seek relief under USERRA. *Id.*

The defendants moved for judgment on the pleadings, asserting that the complaint failed to plead a legally sufficient claim. *Id.* On October 20, 2011, the district court granted the motion, and this court affirmed on July 16, 2012, reasoning that Breaker's complaint did not sufficiently allege extreme and outrageous conduct by the defendants. *Id.* at *2.

In April 2012, the Minnesota Legislature passed a law waiving state sovereign immunity from USERRA claims. 2012 Minn. Laws ch. 192, § 1, at 1. In February 2016, Breaker sued BSU and asserted two USERRA claims.[2] The complaint alleged that BSU failed to rehire him into a "position of like seniority, status and pay" in violation of 38 U.S.C. § 4312–13 (2016), and took adverse employment action against him on the basis of his military status in violation of 38 U.S.C. § 4311 (2016).

BSU moved to dismiss the complaint with prejudice, arguing that res judicata barred Breaker's USERRA claims. The district court determined "that nothing prevented [Breaker] from bringing his USERRA claims" in *Breaker I*. The district court therefore concluded that res judicata barred Breaker's claims and dismissed the complaint. Breaker appeals.

## ISSUE

Did the district court err in determining that res judicata barred Breaker's USERRA claims because he had a full and fair opportunity to litigate in *Breaker I*, which was dismissed before the state waived its sovereign immunity from USERRA claims?

## ANALYSIS

### I. Res judicata requires that the estopped party had a full and fair opportunity to litigate in the earlier action.

 Appellate courts review the application of res judicata de novo. *Mach v. Wells Concrete Prods. Co.*, 866 N.W.2d 921, 925 (Minn. 2015). Res judicata, also referred to as "claim preclusion" and

---

2. USERRA does not contain a statute of limitations. 38 U.S.C. § 4327(b) (2016). We also note that in 2013 and 2015, Breaker filed two separate USERRA lawsuits against BSU in federal district court, which lacks subject-matter jurisdiction over USERRA claims brought against state employers. *See Townsend v. Univ. of Alaska*, 543 F.3d 478, 485 (9th Cir. 2008) (concluding that federal courts lack subject-matter jurisdiction over USERRA claims against state employers). The 2013 complaint was dismissed without prejudice for lack of subject-matter jurisdiction, and the 2015 complaint was dismissed pursuant to the parties' joint stipulation for dismissal. It is undisputed that these two earlier federal lawsuits do not have res judicata effect. *See Dead Lake Ass'n v. Otter Tail Cty.*, 695 N.W.2d 129, 135 n.10 (Minn. 2005) (noting that judgment from court without subject-matter jurisdiction has no res judicata effect).

"merger and bar," seeks to avoid "wasteful litigation" so "that a party may not be twice vexed for the same cause." *Wilson v. Comm'r of Revenue*, 619 N.W.2d 194, 198 (Minn. 2000) (quotation omitted). Res judicata bars a subsequent claim if: "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter." *Rucker v. Schmidt*, 794 N.W.2d 114, 117 (Minn. 2011).[3] "Res judicata applies equally to claims actually litigated and to claims that could have been litigated in the earlier action." *Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P.*, 732 N.W.2d 209, 220 (Minn. 2007).

■ Res judicata "should not be applied rigidly in contravention of public policy." *Schober v. Comm'r of Revenue*, 853 N.W.2d 102, 111 (Minn. 2013). Rather, it is an equitable doctrine that is "applied in light of the facts of each individual case." *R.W. v. T.F.*, 528 N.W.2d 869, 872 n.3 (Minn. 1995). Courts are less likely to apply res judicata if doing so would "work an injustice" on the party against whom the doctrine is urged. *Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. 2004).[4]

■ This appeal only concerns the fourth res judicata element—whether Breaker had a full and fair opportunity to litigate his USERRA claims in *Breaker I*.[5] The fourth res judicata element "focuses on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties." *State v. Joseph*, 636 N.W.2d 322, 329 (Minn. 2001) (quotation omitted). For example, res judicata does not apply when a party is prevented in the first action from bringing the claim raised in the second action. *Wilson*, 619 N.W.2d at 198–99 (reversing tax court's application of res judicata to bar appellant's constitutional claim because tax court's limited jurisdiction did not extend to constitutional claims); *see also Smith v. Johnson*, 779 F.3d 867, 870 (8th Cir. 2015) (holding res judicata inapplicable where administrative agency lacked jurisdiction over claim in first action); Restatement (Second) of Judgments § 26(1)(c) & cmt. c (1982) (stating res judicata does not apply if plaintiff was unable to bring claims in first action due to "formal barriers" or restrictions on the court's "authority to entertain multiple theories").

3. Res judicata is distinct from collateral estoppel, also known as "issue preclusion," which precludes a party from relitigating an *issue* that was decided in a prior lawsuit between the same parties involving a different cause of action. *Mach*, 866 N.W.2d at 927.

4. BSU asserts that courts only apply res judicata flexibly when the first action was an administrative action. For support, BSU cites non-binding federal decisions and unpublished decisions from this court. But our supreme court has consistently stated that courts should not apply res judicata if doing so will contravene public policy or cause an injustice. *See, e.g., Hauschildt*, 686 N.W.2d at 837 (district court proceeding); *R.W.*, 528 N.W.2d at 872 n.3 (same).

5. Breaker concedes that the first two res judicata elements are met, but asserts that the third element is not satisfied because there was no final judgment on the merits of his USERRA claims in *Breaker I*. But in the district court, Breaker conceded that this case "hinge[d] on the fourth" res judicata element, and the parties litigated only the fourth element. Breaker cannot shift legal theories on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that a party may not "obtain review by raising the same general issue litigated below but under a different theory"). Additionally, Breaker's argument is meritless because there was final judgment on the merits of his tort claim in *Breaker I*.

The issue here is whether Breaker's civil action against his state employer for violations of USERRA would have been barred in *Breaker I*. Breaker argues that BSU, as an arm of the state, was protected by sovereign immunity from USERRA claims. BSU responds that, at the time *Breaker I* was dismissed, no binding Minnesota precedent recognized state sovereign immunity from USERRA claims, and USERRA expressly permitted suits against state employers in state courts. The district court agreed with BSU. Thus, we must determine whether sovereign immunity barred BSU's liability from USERRA claims when *Breaker I* was dismissed. If yes, then res judicata would not apply.

## II. Sovereign immunity would have barred Breaker's USERRA claims against his state employer in *Breaker I*.

We review issues of sovereign immunity de novo. *Nichols v. State*, 858 N.W.2d 773, 775 (Minn. 2015). Sovereign immunity "precludes litigation against the state unless the state has consented to suit." [6] *Id.* Sovereign immunity extends to "arms" of the state, including Minnesota state colleges and universities. *Treleven v. Univ. of Minn.*, 73 F.3d 816, 819 (8th Cir.

1996); *accord Raygor*, 620 N.W.2d at 683. Sovereign immunity "serves to protect the fiscal stability of government." *Nichols*, 858 N.W.2d at 775. Minnesota has retained its sovereign immunity for statutory liability unless "the statute demonstrates the Legislature's express intent to allow suit against the State." *Id.* at 776. The legislature demonstrates its express intent to waive sovereign immunity under state statute if the state is either: (a) named in the statute, or (b) "the words of the act are so plain, clear, and unmistakable as to leave no doubt as to the intention of the legislature." Minn. Stat. § 645.27 (2016).

When a state is sued by its own citizens for damages under a federal act, sovereign immunity bars relief. *Alden v. Maine*, 527 U.S. 706, 747, 119 S.Ct. 2240, 2263, 144 L.Ed.2d 636 (1999).[7] A state may consent to be sued under a federal act. *See Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 35, 132 S.Ct. 1327, 1333, 182 L.Ed.2d 296 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."). But a state that does not consent to suit will retain its sovereign immunity from federal statutory

---

**6.** The Minnesota Supreme Court has recognized that how sovereign immunity operates as a defense is the source of some disagreement. *Regents of Univ. of Minn. v. Raygor*, 620 N.W.2d 680, 684–85 (Minn. 2001) (discussing competing views regarding Eleventh Amendment immunity as a subject-matter or other jurisdictional limitation), *aff'd*, 534 U.S. 533, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002); *see also* Erwin Chemerinsky, *Constitutional Law* § 2.10.2, at 187–93 (3d ed. 2006) (same). We conclude that we do not need to answer this question because our holding is based on whether sovereign immunity barred Breaker's USERRA claims and not whether the bar created a subject-matter or other jurisdictional barrier.

**7.** *Alden* relied, in part, on the Eleventh Amendment. 527 U.S. at 712–13, 119 S.Ct. at 2246–47; *see* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). States have sovereign immunity "in various contexts falling outside the literal text of the Eleventh Amendment" because "sovereign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution itself." *Alden*, 527 U.S. at 727–28, 119 S.Ct. at 2253–54; *see also Raygor*, 620 N.W.2d at 683 (noting that the Eleventh Amendment extends beyond its "express language").

liability, unless specific exceptions apply. *Id.* One exception arises when "Congress has unequivocally abrogated state immunity" through federal legislation.[8] *Raygor,* 620 N.W.2d at 683.

▮▮▮▮▮ Valid abrogation of state sovereign immunity by Congress must meet two prongs: (1) the federal statute must contain an unequivocal expression of congressional intent to abrogate, and (2) Congress must have "acted pursuant to a valid grant of constitutional authority." *Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 73, 120 S.Ct. 631, 640, 145 L.Ed.2d 522 (2000). If Congress attempts to abrogate state sovereign immunity in federal legislation that fails either prong, then states retain their sovereign immunity from liability. *See Raygor,* 620 N.W.2d at 685 ("Congress cannot, absent valid abrogation of sovereign immunity, extend federal judicial power against unconsenting states."). Congress's authority to abrogate state sovereign immunity is "limited," and courts "exercise care before finding abrogation." *Alsbrook v. City of Maumelle,* 184 F.3d 999, 1005 (8th Cir. 1999).

▮▮▮▮▮ Here, it is undisputed that BSU is an arm of the State of Minnesota and therefore entitled to sovereign immunity.

*See* Minn. Stat. §§ 136F.06, .10 (2016) (providing powers and duties of Minnesota State Colleges and Universities as state agency, and designating BSU as member of Minnesota State Colleges and Universities). It is further undisputed that Minnesota did not waive its sovereign immunity from USERRA claims until April 2012, after dismissal of Breaker's tort claim in *Breaker I.* Accordingly, we must determine whether Congress validly abrogated state sovereign immunity from USERRA claims.

No Minnesota case has directly analyzed Congress's authority to abrogate state sovereign immunity from civil liability under a federal statute.[9] United States Supreme Court precedent guides our analysis. First, we consider whether Congress unequivocally expressed its intent to abrogate state sovereign immunity from USERRA claims. USERRA provides that a plaintiff may sue a state employer "in a State court of competent jurisdiction in accordance with the laws of the State."[10] 38 U.S.C. § 4323(b)(2). We conclude that USERRA's plain language evinces Congress's intent to abrogate state sovereign immunity and subject state employers to civil suit in state court.[11] *See Velasquez v. Frapwell,*

8. There are two other well-recognized exceptions to sovereign immunity, neither of which has any bearing on this appeal. *See Principality of Monaco v. Mississippi,* 292 U.S. 313, 328–29, 54 S.Ct. 745, 750, 78 L.Ed. 1282 (1934) (holding states did not retain their sovereign immunity from claims brought by other states and by the federal government); *Ex parte Young,* 209 U.S. 123, 155–56, 28 S.Ct. 441, 452, 52 L.Ed. 714 (1908) (permitting suit for declaratory or injunctive relief against state officers for continuing violations of federal law).

9. The Minnesota Supreme Court discussed abrogation of sovereign immunity in *Raygor,* but did not conduct the two-prong abrogation analysis. Also, *Raygor* decided a different issue: whether Minnesota's waiver of immunity

in state court under a state statute was also a valid waiver of immunity in federal court. 620 N.W.2d at 685–87.

10. At least three courts have interpreted the phrase, "in accordance with the laws of the State," as expressing Congress's intent to abrogate state sovereign immunity, but only to the extent that state law permits suits against a state. *Larkins v. Dep't of Mental Health & Mental Retardation,* 806 So.2d 358, 363 (Ala. 2001); *Janowski v. Div. of State Police, Dep't of Safety & Homeland Sec.,* 981 A.2d 1166, 1170 (Del. 2009); *Smith v. Tenn. Nat'l Guard,* 387 S.W.3d 570, 574 (Tenn. Ct. App. 2012).

11. Section 4323(b)(2)'s legislative history supports this reading of the statute's plain language. When Congress enacted USERRA

165 F.3d 593, 594 (7th Cir. 1999) ("Congress's intention to limit USERRA suits against states to state courts is unmistakable."); *Risner v. Ohio Dep't of Rehab. & Corr.*, 577 F.Supp.2d 953, 963 (N.D. Ohio 2008) (concluding that Congress intended to abrogate state sovereign immunity from USERRA claims); *see also Kimel*, 528 U.S. at 73–74, 120 S.Ct. at 640 (interpreting similar jurisdictional provision under Age Discrimination and Employment Act and concluding that statute's plain language "clearly demonstrate[d] Congress' intent to subject the States to suit").

▪ Second, we determine whether Congress had authority to abrogate state sovereign immunity from USERRA claims. Congress had abrogation authority only "if there is compelling evidence that the States were required to surrender this power to Congress pursuant to the constitutional design." *Alden*, 527 U.S. at 731, 119 S.Ct. at 2255 (quotation omitted).

Congress promulgated USERRA under the Article 1 War Powers Clause. *Bedrossian v. Nw. Mem'l Hosp.*, 409 F.3d 840, 843 (7th Cir. 2005); *Clark v. Va. Dep't of State Police*, 292 Va. 725, 793 S.E.2d 1, 5 & n.5 (2016) (citing USERRA's legislative history); *see* U.S. Const. Art. 1, § 8, cl. 11 (conferring Congress with power to declare war, write letters of marque and reprisal, and make rules concerning cap-

tures on land and water). We therefore analyze whether Congress had authority under the War Powers Clause to abrogate state sovereign immunity. United States Supreme Court precedent compels our conclusion that it did not.

In *Alden*, the Supreme Court held that "the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject non-consenting States to private suits for damages in state courts." 527 U.S. at 712, 119 S.Ct. at 2246. The plaintiffs in *Alden* asserted claims against their state employer under the Fair Labor Standards Act (FLSA), which Congress promulgated under the Article 1 Commerce Clause. *Id.* at 711, 731–33, 119 S.Ct. at 2246, 2255–56. But *Alden* did not limit its holding to the Commerce Clause or to the FLSA; it held "that the States retain immunity from private suit in their own courts, an immunity beyond the congressional power to abrogate by Article I legislation." *Id.* at 754, 119 S.Ct. at 2266; *see Clark*, 793 S.E.2d at 5 (stating that *Alden* "encompassed all congressional powers recognized in Article 1 not just the power over interstate commerce"). Applying this analysis to USERRA, *Alden* suggests that Congress lacked authority under Article 1 to abrogate state sovereign immunity from USERRA claims.[12]

---

1994, there was little concern for a sovereign immunity bar to civil suits against state employers, so Congress "treat[ed] States in the same manner as private employers." H.R. Rep. 105-448 (1998), 1998 WL 117158, at *4–5. After states began successfully asserting that sovereign immunity precluded USERRA claims in federal court, Congress amended USERRA in 1998, giving state courts exclusive jurisdiction over USERRA claims against state employers. *Id.* at *2–5. The amendment's legislative history establishes that Congress was concerned that a sovereign immunity bar to USERRA claims would "threaten not only a long-standing policy protecting individuals'

employment right[s], but also raise serious questions about the United States' ability to provide for a strong national defense." *Id.* at *5.

**12.** Since *Alden*, the Supreme Court and the lower courts, including the Eighth Circuit Court of Appeals, have unambiguously stated that Congress's only recognized source of abrogation power is the Fourteenth Amendment. *See Coleman*, 566 U.S. at 35, 132 S.Ct. at 1333 (concluding that Congress intended to abrogate sovereign immunity under self-care provision of Family and Medical Leave Act, but abrogation was invalid because provision

The Supreme Court carved out a narrow exception to *Alden* in *Central Virginia Community College v. Katz*, holding that Congress had authority to abrogate sovereign immunity in federal bankruptcy proceedings under the Article 1 Bankruptcy Clause. 546 U.S. 356, 375–79, 126 S.Ct. 990, 1003–05, 163 L.Ed.2d 945 (2006); *see* U.S. Const. art. 1, § 8, cl. 4 (providing that Congress may "establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States"). BSU maintains that *Katz* would have allowed Breaker to bring his USERRA claims in *Breaker I*. BSU does not speculate whether Breaker would have defeated a sovereign immunity challenge to his USERRA claims in *Breaker I*, but maintains that "the issue of whether USERRA validly abrogated States' sovereign immunity was a litigable question in 2011." BSU's argument fails for two reasons.[13]

First, BSU's argument is inconsistent with Minnesota precedent and federal caselaw. In *Raygor*, the Minnesota Supreme Court interpreted *Alden*, stating "that a federal statutory provision that purports to allow private actions against unconsenting states in their own court is unconstitutional." 620 N.W.2d at 686. Abrogation analysis was not dispositive in *Raygor*, but the supreme court's broad interpretation of *Alden* lends support to Breaker's argument that his USERRA claims would have been barred in *Breaker I*. Because *Raygor* was decided before *Katz*, and Minnesota has not applied abrogation analysis post-*Katz*, we turn to federal caselaw. The Eighth Circuit Court of Appeals has recognized that *Katz* reflects a "narrow" exception to the rule that Congress may not abrogate state sovereign immunity under Article 1. *St. Charles Cty.*, 447 F.3d at 1058 n.4. The Eighth Circuit has also held that *Katz* does not apply in non-bankruptcy cases because its holding was premised on the "unique history" of

was not enacted under the Fourteenth Amendment); *Kimel*, 528 U.S. at 79, 120 S.Ct. at 643 (stating that it is "firmly established" that Congress cannot abrogate sovereign immunity under a statute promulgated solely under Article 1); *Bd. of Trs. v. Garrett*, 531 U.S. 356, 364, 121 S.Ct. 955, 962, 148 L.Ed.2d 866 (2001) ("Congress may not, of course, base its abrogation of the State's Eleventh Amendment immunity upon the powers enumerated in Article 1."); *St. Charles Cty., Mo. v. Wisconsin*, 447 F.3d 1055, 1059 (8th Cir. 2006) ("Congress may not use its powers under Article 1 to abrogate the states' sovereign immunity.").

**13.** BSU relies on an amicus brief filed in New Mexico and a federal circuit court decision. Neither authority is persuasive. In *Ramirez v. State, CYFD*, the Department of Justice filed an amicus brief arguing that Congress had abrogation authority under the War Powers Clause. 326 P.3d 474 (N.M App. 2014), *rev'd*, 372 P.3d 497 (N.M. 2016). The New Mexico Court of Appeals disagreed, holding that "the War Powers Clause does not authorize Congress to subject the State to private USERRA

suits for damages in our state courts, absent the State's consent." *Id.* at 480. The New Mexico Supreme Court reversed, but declined to address the abrogation issue because it concluded that New Mexico had validly waived sovereign immunity from USERRA claims. *Ramirez v. State, CYFD*, 372 P.3d 497, 502, 506–07 (N.M. 2016). *Ramirez* is inapposite because, unlike New Mexico, Minnesota did not waive its sovereign immunity from USERRA claims until after the dismissal in *Breaker I*. BSU also relies on a 1996 decision holding that Congress "removed the Eleventh Amendment bar to damages actions brought under" the Veterans Reemployment Rights Act (VRRA), USERRA's precursor. *Diaz-Gandia v. Dapena-Thompson*, 90 F.3d 609, 616 (1st Cir. 1996). *Diaz* is unpersuasive because the authority on which it relied was based on Supreme Court precedent that has subsequently been overruled. *Id.*; *see Risner*, 577 F.Supp.2d at 963–64 (recognizing the instability of *Diaz*). Additionally, *Diaz* was decided before *Alden* and before Congress amended USERRA to confer exclusive jurisdiction to state courts over lawsuits against state employers.

the Bankruptcy Clause and "the singular nature of bankruptcy courts' jurisdiction." *Id.*

Second, BSU's argument has been rejected by other state appellate courts. At least four other state courts have interpreted *Alden* as precluding Congress from abrogating state sovereign immunity in state court under the War Powers Clause and have held that USERRA did not subject states to private damages claims. *Larkins*, 806 So.2d at 361–63; *Janowski*, 981 A.2d at 1170; *Anstadt v. Bd. of Regents of Univ. Sys. of Ga.*, 303 Ga.App. 483, 693 S.E.2d 868, 870–71 (2010), *review denied* (Ga. Oct. 4, 2010); *Clark*, 793 S.E.2d at 5–7. Of these cases, two concluded that *Katz* was a narrow exception to *Alden*, limited to federal bankruptcy proceedings, and did not apply to other Article 1 powers. *Clark*, 793 S.E.2d at 5–7; *Anstadt*, 693 S.E.2d at 870–71.

We find the Virginia Supreme Court's analysis persuasive. In *Clark*, the Virginia Supreme Court concluded that *Alden*'s holding was "unqualified" and precluded suits against nonconsenting states in state court for liability created by federal laws enacted under "*all* congressional powers recognized in Article 1." 793 S.E.2d at 5–7 (emphasis added). *Clark* made two key points. First, *Katz* concerned suits filed in federal bankruptcy courts and did not take "issue with *Alden*'s recognition of a State's sovereign immunity in its own courts." *Id.* at 6. Second, "*Katz* involved a unique body of law governing 'in rem'" jurisdiction and acknowledged that in rem jurisdiction does "'not implicate States' sovereignty to nearly the same degree as other kinds of jurisdictions.'" *Id.* (quoting *Katz*, 546 U.S. at 362, 126 S.Ct. at 990). Thus, *Katz* does not limit *Alden*'s broad, unqualified holding that Congress lacked authority under Article 1 to abrogate state sovereign immunity from damages claims.

In sum, we conclude that Congress lacked authority under the Article 1 War Powers Clause to abrogate state sovereign immunity from USERRA claims in state court. Accordingly, sovereign immunity barred private damages actions against state employers for USERRA violations until the state waived its immunity in April 2012, which occurred after *Breaker I* was dismissed. Breaker therefore lacked a full and fair opportunity to litigate his USERRA claims in *Breaker I*. We note that our decision has no bearing on the merits of Breaker's claims. We merely hold that the state is not entitled to dismissal on res judicata grounds.

 Equity supports our conclusion that res judicata does not apply. Strong public policy considerations support USERRA's enactment. 38 U.S.C. § 4301(a)(1)–(3); *see also* 38 U.S.C. § 4327(b) (providing that there is no statute of limitations for USERRA claims). When Congress gave state courts exclusive jurisdiction over USERRA claims against state employers, it sought to provide state employees with the same protection as private and federal employees. H.R. Rep. 105-448 (1998), 1998 WL 117158, at *4–5. Similarly, Minnesota waived sovereign immunity from civil suits under USERRA due to concerns that state employees were effectively excluded from USERRA protections. Hearing on S.F. No. 343 Before the S. Comm. on State Gov't Innovation & Veterans (Feb. 8, 2012).

For the reasons discussed, we conclude the district court erred in dismissing Breaker's claims on the ground of res judicata.

## DECISION

Because the state did not waive its sovereign immunity from USERRA claims until after *Breaker I* was dismissed, and

Congress did not validly abrogate sovereign immunity from USERRA claims, sovereign immunity would have barred Breaker's private damages action against his state employer for USERRA violations in *Breaker I*. Accordingly, Breaker lacked a full and fair opportunity to litigate his USERRA claims in *Breaker I*, and the district court erred in dismissing Breaker's USERRA claims on the basis of res judicata.

**Reversed and remanded.**