

# NUMBER 13-17-00659-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**TEXAS DEPARTMENT OF
PUBLIC SAFETY,**                                 **Appellant,**

**v.**

**LEROY TORRES,**                                        **Appellee.**

---

**On appeal from the County Court at Law No. 1
of Nueces County, Texas.**

---

# O P I N I O N

**Before Justices Contreras, Benavides, and Longoria
Opinion by Justice Contreras**

In this case of first impression, we are asked whether sovereign immunity bars claims by private individuals against units of state government under the federal Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA). *See*

38 U.S.C.A. §§ 4301–4335 (West, Westlaw through P.L. 115-223). The trial court denied a plea to the jurisdiction on those grounds filed by appellant, the Texas Department of Public Safety (DPS), in a suit brought by appellee Leroy Torres.

By one issue on appeal, DPS contends that the trial court erred in denying its plea because sovereign immunity applies and has not been validly abrogated by Congress or waived by the legislature. A review of the relevant case law compels us to agree. Therefore, we will reverse and render judgment granting DPS's plea.

## I. BACKGROUND

Torres enlisted in the United States Army Reserve in 1989 and was deployed to Iraq in 2007. Prior to deployment, Torres had been employed as a DPS trooper since 1998. In 2008, Torres was honorably discharged and sought to be reemployed by DPS. However, because of a lung condition he acquired while serving in Iraq, Torres requested reemployment with DPS in a different position than the one he held earlier. DPS declined to offer him a different job but did provide a "temporary duty offer" of continued employment in his prior position. Instead of returning to his original position, Torres resigned.

Torres sued DPS in 2017, alleging that DPS's failure to offer him a job that would accommodate his disability violated USERRA, a federal statute that prohibits adverse employment actions against an employee based on the employee's military service. *See id.* § 4311. Torres alleged that DPS officials "forced" him to resign because of the injuries he suffered incident to his military service. His petition sought: (1) a declaration that DPS's actions violated USERRA; (2) an order "[r]equir[ing] that [DPS] fully compl[y] with the provisions of USERRA by providing [Torres] with . . . compensatory and/or liquidated

2

damages in an amount equal to the amount of lost compensation and other benefits suffered by reason of [DPS]'s willful violations of USERRA"; and (3) attorney's fees and costs. DPS filed a plea to the jurisdiction contending that sovereign immunity applies and deprives the trial court of subject-matter jurisdiction. After a hearing, the trial court denied the plea, and DPS perfected this appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West, Westlaw through 2017 1st C.S.).

## II. DISCUSSION

### A. Standard of Review

A plea to the jurisdiction is a dilatory plea used to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction. *Id.* Whether a trial court has subject matter jurisdiction and whether the pleader has alleged facts that affirmatively demonstrate the trial court's subject matter jurisdiction are questions of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

The plaintiff has the initial burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *See Miranda*, 133 S.W.3d at 226, 228.

Here, the issue of immunity turns on the trial court's construction of constitutional and statutory provisions, which are decisions that we review de novo. *See Harris Cty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009).

**B.     Applicable Law**

The doctrine of sovereign immunity holds that "no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006) (citing *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847)); *see Nevada v. Hall*, 440 U.S. 410, 414 (1979) ("The immunity of a truly independent sovereign from suit in its own courts has been enjoyed as a matter of absolute right for centuries.  Only the sovereign's own consent could qualify the absolute character of that immunity.").  Thus, unless waived by the Texas Legislature or abrogated by the United States Congress, sovereign immunity deprives a Texas trial court of subject-matter jurisdiction over any lawsuit against a Texas governmental agency such as DPS.  *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011).

USERRA provides that "[a] person who is a member of . . . a uniformed service shall not be denied . . . reemployment . . . or any benefit of employment by an employer on the basis of that membership . . . ." 38 U.S.C.A. § 4311(a).  Subchapter III of USERRA sets forth a procedure under which employees may seek assistance in investigating and enforcing their claims of USERRA violations.  *See id.* § 4321–4327.  Under that subchapter, a person who claims entitlement to employment or reemployment rights under USERRA may file a complaint with the Secretary of Labor, who must then investigate the claim.  *Id.* § 4322(a), (d).  If the Secretary of Labor cannot resolve the complaint, the claimant may request that the Secretary refer the claim to the Attorney General, who must then decide whether to appear on behalf of, or act as attorney for, the claimant.  *Id.* §§ 4323(a)(1), (2).  The statute then provides:

> A person may commence an action for relief with respect to a complaint against a State (as an employer) or a private employer if the person

4

(A)     has chosen not to apply to the Secretary for assistance under section 4322(a) of this title;

(B)     has chosen not to request that the Secretary refer the complaint to the Attorney General under paragraph (1); or

(C)     has been refused representation by the Attorney General with respect to the complaint under such paragraph.

*Id.* § 4323(a)(3).  The following subsection, entitled "Jurisdiction," states:

(1)     In the case of an action against a State (as an employer) or a private employer commenced by the United States, the district courts of the United States shall have jurisdiction over the action.

(2)     *In the case of an action against a State (as an employer) by a person, the action may be brought in a State court of competent jurisdiction in accordance with the laws of the State.*

(3)     In the case of an action against a private employer by a person, the district courts of the United States shall have jurisdiction of the action.

*Id.* § 4323(b) (emphasis added).

## C.     Analysis

Torres alleged in his suit that the trial court had jurisdiction pursuant to USERRA section 4323(b)(2).  *See id.* § 4323(b)(2).  In its plea to the jurisdiction, DPS argued that its immunity to a private suit in state court for damages under USERRA has neither been validly abrogated by Congress nor validly waived by the legislature.  *See Sawyer Tr.*, 354 S.W.3d at 388.

### 1.     Abrogation of Immunity by Congress

We first address whether Congress has validly abrogated immunity with its enactment of USERRA.  For Congress to validly abrogate a State's sovereign immunity, it must (1) unequivocally express its intent to do so, and (2) act "pursuant to a

constitutional provision granting Congress the power to abrogate." *Univ. of Tex. at El Paso v. Herrera*, 322 S.W.3d 192, 195 (Tex. 2010).[1]

DPS argues that Congress has the constitutional power to abrogate a State's sovereign immunity to suits in its own courts only when exercising its powers under section 5 of the Fourteenth Amendment, and never when exercising the powers granted to it by Article I of the Constitution. It relies on *Alden v. Maine*, in which the United States Supreme Court broadly held that "[t]he powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting States to private suits for damages in state courts." 527 U.S. 706, 712 (1999). USERRA was arguably enacted pursuant to Congress's Article I War Powers, *see* U.S. CONST. art. I, § 8, cl. 11–16; therefore, according to DPS, USERRA cannot constitutionally abrogate its sovereign immunity to private suits for damages in Texas courts.

The United States Supreme Court held in *Seminole Tribe of Florida v. Florida* that Congress lacks power under Article I to abrogate States' sovereign immunity to suits commenced or prosecuted in federal courts. 517 U.S. 44, 66, 76 (1996) (overruling *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 23 (1989)); *see also* U.S. CONST. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). In *Alden*, the Court was

---

[1] The dissent acknowledges that both of these prongs must be satisfied in order for Congress to effectively abrogate State immunity, but it addresses only the first prong. It suggests, based on a cursory examination of legislative history, that Congress intended to abrogate State immunity by enacting USERRA. The dissent does not dispute our conclusion, which we will explain herein, that Congress lacked the power to abrogate pursuant to the Constitution. Such power is a necessary prerequisite to finding that Congress abrogated State immunity. *See Univ. of Tex. at El Paso v. Herrera*, 322 S.W.3d 192, 195 (Tex. 2010). Therefore, the dissent's discussion regarding Congressional intent is irrelevant. *See* TEX. R. APP. P. 47.1.

asked whether the *Seminole Tribe* holding applies equally to suits brought in State courts; specifically, it considered whether the federal Fair Labor Standards Act of 1938 (FLSA) validly abrogated Maine's sovereign immunity to private suits for damages in its own courts.  527 U.S. at 711–12.

Justice Kennedy, writing for a 5–4 majority, held that even though the Eleventh Amendment does not address jurisdiction of State courts, *see* U.S. CONST. amend. XI, immunity from suit "is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . except as altered by the plan of the Convention or certain constitutional Amendments." *Alden*, 527 U.S at 713.[2]  Thus, the States retain "a residuary and inviolable sovereignty" which includes immunity to non-consensual suits in its own courts "save where there has been 'a surrender of this immunity in the plan of the convention.'"  *Id*. at 715, 730 (quoting *Principality of Monaco v. Mississippi*, 292 U.S. 313, 322–23 (1934)).  The Court held:  "In exercising its Article I powers Congress may subject the States to private suits in their own courts only if there is 'compelling evidence' that the States were required to surrender this power to Congress pursuant to the constitutional design"; that is, there must be "compelling evidence" that "this derogation of the States' sovereignty is 'inherent in the constitutional compact.'"  *Id*. at 731, 741 (quoting *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 781 (1991)).  After reviewing the "history, practice, precedent, and structure of the Constitution," the Court concluded that the States' "immunity from private suit in their own courts" is "beyond the congressional power to abrogate by Article

---

[2] The Court noted that, though a State's immunity from suit is sometimes referred to as "Eleventh Amendment immunity," that phrase is "something of a misnomer" because "the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment."  *Alden v. Maine*, 527 U.S. 706, 712–13 (1999); *see Hoff v. Nueces Cty.*, 153 S.W.3d 45, 48 (Tex. 2004).

I legislation." *Id.* at 754. Therefore, Maine's sovereign immunity could not be validly abrogated by the FLSA, which was enacted pursuant to Congress's Article I power to regulate interstate commerce. *Id.*; *see* 29 U.S.C.A. § 202(b) (West, Westlaw through P.L. 115-223).

The *Alden* majority observed, however, that the States' immunity to suit in their own courts is not unlimited; for example, States may waive immunity by consenting to suit, or their immunity may be "surrendered" by the adoption of a constitutional amendment. *Alden*, 527 U.S. at 712. For example, in adopting the Fourteenth Amendment, the States "surrender[ed] a portion of the sovereignty that had been preserved to them by the original Constitution"; therefore, Congress may validly abrogate a State's immunity in its own courts under section 5 of that amendment, which grants Congress the "power to enforce" the provisions of the amendment by "appropriate legislation." *Id.* at 756 (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976)); *see* U.S. CONST. amend. XIV, § 5.

Here, there is no suggestion that USERRA was enacted pursuant to Congress's powers under section 5 of the Fourteenth Amendment; instead, the parties agree that it was enacted pursuant to Congress's Article I powers. Nevertheless, Torres argues that *Alden* did not categorically preclude abrogation of sovereign immunity in all Article I laws. Torres contends instead that *Alden*'s holding applies narrowly to the specific legislation considered in that case (the FLSA) and the specific Article I enumerated power under which that legislation was enacted (the interstate commerce clause). *See* U.S. CONST. art. I, § 8, cl. 3. To the extent *Alden* purported to reject abrogation of sovereign immunity in any other Article I legislation, Torres alleges that such holding is merely dicta. More

8

specifically, Torres contends that USERRA was enacted pursuant to Congress's War Powers, *see* U.S. CONST. art. I, § 8, cl. 11–16, and that Congress could validly abrogate state immunity in its exercise of those powers because there is "compelling evidence" that the States "were required to surrender" War Powers to Congress "pursuant to the constitutional design." *See Alden*, 527 U.S. at 731, 741 (quoting *Blatchford*, 501 U.S. at 781).

In support of this narrow reading of *Alden*, Torres cites *Diaz-Gandia v. Dapena-Thompson*, 90 F.3d 609 (1st Cir. 1996) and *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006). In *Diaz-Gandia*, the federal First Circuit Court of Appeals held that claims brought by a private plaintiff against State entities under the Veterans' Reemployment Rights Act (VRRA), the predecessor of USERRA, were not barred by sovereign immunity. 90 F.3d at 616 (relying on *Reopell v. Massachusetts*, 936 F.2d 12, 16 (1st Cir. 1991) ("[P]assage of the VRRA—assuming Congress expressed its intention to abrogate with adequate clarity—removed the Eleventh Amendment bar to damages actions brought under the Act against a state.")). *Diaz-Gandia* was decided after *Seminole Tribe*, but before *Alden*. Accordingly, it reflects the First Circuit's determination that, notwithstanding *Seminole Tribe*, States are amenable to private suits in federal court if suit is authorized pursuant to Congress's War Powers. *See id.*

In *Katz*, the United States Supreme Court considered whether, despite *Seminole Tribe* and *Alden*, a private plaintiff was authorized to sue State entities under federal bankruptcy legislation. *See* 546 U.S. 356, 359. The statutes at issue in that case, enacted under Congress's Article I bankruptcy powers, purport to abrogate sovereign immunity for, *inter alia*, suits by bankruptcy trustees to set aside "preferential transfers"

9

by the debtor to state agencies. *See* 11 U.S.C.A. §§ 106, 547(b), 550(a) (West, Westlaw through P.L. 115-223). In another 5–4 opinion, the *Katz* Court rejected the defendants' sovereign immunity defense to a suit brought pursuant to those statutes, concluding that that the States "agreed in the plan of the Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to 'Laws on the subject of Bankruptcies.'" *Katz*, 546 U.S. at 377 (quoting U.S. CONST. art. I, § 8, cl. 4 (authorizing Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States")).[3] The Court noted, however, that "[b]ankruptcy jurisdiction, at its core, is *in rem*" and therefore "does not implicate States' sovereignty to nearly the same degree as other kinds of jurisdiction." *Id.* at 362 (citing *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004) (noting that a bankruptcy debtor "does not seek monetary damages or any affirmative relief from a State by seeking to discharge a debt; nor does he subject an unwilling State to a coercive judicial process. He seeks only a discharge of his debts")).

We decline to interpret *Alden* narrowly as suggested by Torres. Our decision is based on the broad language used in the opinion itself and is in accord with the decisions of the other State courts that have considered the issue.

First, we observe that in analyzing whether Congress validly abrogated state immunity, the *Alden* majority opinion did not mention the subject matter of the legislation at issue, nor did it mention the specific Article I enumerated power pursuant to which that legislation was enacted. *See* 527 U.S. at 731–55. This strongly implies that the *Alden* holding was intended to apply to laws enacted pursuant to *any* of the powers of Congress

---

[3] The *Katz* Court acknowledged that both the majority and dissenting opinions in *Seminole Tribe* "reflected an assumption that the holding in that case would apply to the Bankruptcy Clause." *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006). The Court found that assumption to be "erroneous." *Id.*

enumerated in Article I—not just laws, such as FLSA, enacted under the interstate commerce clause.

Second, the plain language of USERRA indicates that it was not, strictly speaking, enacted pursuant to Congress's War Powers as enumerated in Article I, section 8; rather, it was enacted pursuant to the Necessary and Proper Clause of that section. *See* U.S. CONST. art. I, § 8, cl. 11–16 (War Powers),[4] cl. 18 (Necessary and Proper Clause). The *Alden* Court specifically rejected the notion that the Necessary and Proper Clause of Article I granted Congress "the incidental authority to subject the States to private suits as a means of achieving objectives otherwise within the scope of the enumerated powers." 527 U.S. at 732. Therefore, regardless of whether the ruling in *Alden* is applicable to War Powers legislation, it is indisputably applicable to USERRA as legislation enacted under the Necessary and Proper Clause.

Subsequent case law generally supports the broad principle that, under *Seminole Tribe* and *Alden*, state agencies' immunity to private suits in both federal and state courts

---

[4] The enumerated War Powers granted to Congress in Article I, section 8 are as follows:

To declare War, grant Letters of Marque and Reprisal, and make Rules concerning Captures on Land and Water;

To raise and support Armies, but no Appropriation of Money to that Use shall be for a longer Term than two Years;

To provide and maintain a Navy;

To make Rules for the Government and Regulation of the land and naval Forces; [and]

To provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions;

To provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress . . . .

U.S. CONST. art. I, § 8, cl. 11–16. As DPS notes, the regulation of non-military employment discrimination against members of the armed forces is not among these enumerated powers.

11

cannot be abrogated by Article I legislation. Though *Katz* recognized a limited exception to this rule for actions to enforce certain bankruptcy statutes, the Court made clear that this exception is derived from the particular attributes of *in rem* bankruptcy jurisdiction which are not present in this case. *See* 546 U.S. at 377; *Clark v. Va. Dep't of State Police*, 793 S.E.2d 1, 7 (Va. 2016) (stating that the *Katz* "qualification" is "applicable only to claims arising within a federal bankruptcy court's *in rem* jurisdiction over a bankruptcy estate" and "does not apply to [appellant]'s state-court claim for *in personam* damages" under USERRA); *see also Agostini v. Felton*, 521 U.S. 203, 237 (1997) (stating that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions").

*Diaz-Gandia* is more difficult to distinguish. The federal appeals court in that case specifically held that the holding of *Seminole Tribe* does not extend to laws enacted pursuant to Congress's War Powers. *See* 90 F.3d at 616 n.9. But, as at least two federal district courts have recognized, the decision in *Diaz-Gandia* appears to have been based on an incorrect observation that "no subsequent development has undermined *Reopell*," the case upon which that decision relied. *See Risner v. Ohio Dep't of Rehab. & Corr.*, 577 F. Supp. 2d 953, 964 (N.D. Ohio 2008) (noting that "the decision in *Diaz–Gandia* is undermined by the fact that *Reopell* was based upon *Pennsylvania v. Union Gas Co.*, . . . which was overruled by *Seminole Tribe*"); *Palmatier v. Mich. Dep't of State Police*, 981 F. Supp. 529, 532 (W.D. Mich. 1997) (declining to follow *Diaz-Gandia* and *Reopell* because they are based on *Pennsylvania v. Union Gas Co.* and therefore "their continuing vitality is suspect" in light of *Seminole Tribe*).

12

In any event, the federal Fifth Circuit Court of Appeals has directly stated, contrary to *Diaz-Gandia*, that *Seminole Tribe* applies to War Powers legislation. *Ysleta Del Sur Pueblo v. Laney*, 199 F.3d 281, 288 (5th Cir. 2000) (citing *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 636 (1999) ("*Seminole Tribe* makes clear that Congress may not abrogate state sovereign immunity pursuant to its Article I powers[.]")). And several state appellate courts, applying both *Seminole Tribe* and *Alden*, have specifically concluded that the sovereign immunity of state agencies is not abrogated for suits in state courts brought under section 4323(b) of USERRA. *See Breaker v. Bemidji State Univ.*, 899 N.W.2d 515, 524 (Minn. Ct. App. 2017) (concluding that "Congress lacked authority under the Article 1 War Powers Clause to abrogate state sovereign immunity from USERRA claims in state court"); *Clark*, 793 S.E.2d at 7 ("*Alden*'s holding was unqualified: Nonconsenting States cannot be forced to defend 'private suits' seeking *in personam* remedies 'in their own courts' based upon 'the powers delegated to Congress under Article I of the United States Constitution.'"); *Anstadt v. Bd. of Regents of Univ. Sys. of Ga.*, 487, 693 S.E.2d 868, 871 (Ga. Ct. App. 2010) (rejecting the argument that "the enactment of USERRA abrogated the state's sovereign immunity because it was enacted pursuant to Congress's war powers"); *Janowski v. Div. of State Police*, 981 A.2d 1166, 1170 (Del. 2009) (holding that "[USERRA] could not abrogate state sovereign immunity, because Congress passed that law pursuant to its Article I, Section 8 war powers"); *Larkins v. Dep't of Mental Health & Mental Retardation*, 806 So.2d 358, 362–63 (Ala. 2001) ("*Alden* forecloses, on constitutional grounds, resort to Article I as the basis for subjecting the State of Alabama to suit in a state court on a remedy based upon

13

Congress's assertion of its powers with respect to military preparedness.").[5]  These cases either implicitly or explicitly reject the contention, made by Torres here, that *Alden* is non-binding dicta to the extent it purports to pass judgment over legislation other than the FLSA.

Though these cases are not binding,[6] they are directly on point and persuasive. We therefore follow them and reject the flawed reasoning in *Diaz-Gandia*.  Accordingly, we conclude that, pursuant to the binding precedent of the United States Supreme Court in *Seminole Tribe* and *Alden*, DPS's sovereign immunity to private claims in state court has not been validly abrogated by USERRA.[7]

---

[5] Though the Texas Supreme Court has not explicitly weighed in on the matter at issue here, it has used language suggestive of a broad interpretation of *Alden*.  *See Hoff*, 153 S.W.3d at 48 (stating that, under *Alden*, sovereign immunity "protects nonconsenting states from being sued in their own courts for federal law claims").  The Fifth Circuit has held that there is no private right of suit in federal court under USERRA section 4323(b), but it declined to address whether that section effectively abrogates Texas's sovereign immunity.  *See McIntosh v. Partridge*, 540 F.3d 315, 321 n.5 (5th Cir. 2008).

[6] *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) ("While Texas courts may certainly draw upon the precedents of the Fifth Circuit, or any other federal or state court, in determining the appropriate federal rule of decision, they are obligated to follow only higher Texas courts and the United States Supreme Court.").

[7] DPS further argues that, even if Congress had the authority to abrogate sovereign immunity to private suits in state court through USERRA, it has not unequivocally expressed its intent to do so in USERRA section 4323(b)(2).  *See Herrera*, 322 S.W.3d at 195.  It notes that, according to the statute, such suits are subject to "the laws of the State," but the legislature has not waived DPS's immunity under state law.  *See* 38 U.S.C.A. § 4323(b)(2) (West, Westlaw through P.L. 115-223); *Smith v. Tenn. Nat'l Guard*, 387 S.W.3d 570, 574 (Tenn. Ct. App. 2012) (interpreting section 4323(b)(2) to mean that "for an individual to sustain an action against a state pursuant to USERRA, the action must be permitted by state law").  DPS further notes that section 4323(b)(2) states that suit "may" be brought, whereas sections 4323(b)(1) and (b)(3), which purport to authorize suit in federal court, state that suit "shall" be brought.  *See* 38 U.S.C.A. § 4323(b)(1)–(3).  In response, Torres notes that section 4323(b)(2) was enacted soon after *Seminole Tribe* and the intent of Congress was to ensure that plaintiffs have a forum—state court—in which they can bring USERRA claims against state agencies.

We need not and do not address whether Congress has unequivocally expressed its intent to abrogate state sovereign immunity in section 4323(b)(2), because we have already concluded that it lacked the Constitutional authority to do so.  *See Alden*, 527 U.S. at 712; *Herrera*, 322 S.W.3d at 195; *see also* TEX. R. APP. P. 47.1.

## 2. Waiver of Immunity by the Legislature

We next address whether DPS's sovereign immunity has been validly waived by the Texas Legislature. For the legislature to validly waive sovereign immunity, it must consent to suit by "clear and unambiguous" statutory language. TEX. GOV'T CODE ANN. § 311.034 (West, Westlaw through 2017 1st C.S.) ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."); *Tooke*, 197 S.W.3d at 332–33. Any ambiguity in a statute must be resolved in favor of retaining immunity. *Tooke*, 197 S.W.3d at 330, 342 (holding that statutory provisions providing that state entities may "sue and be sued" or "plead and be impleaded" are unclear and ambiguous and therefore do not, by themselves, waive immunity); *see Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003).

At the trial court and on appeal, Torres argues that the legislature demonstrated its intent to waive sovereign immunity in this case by enacting chapter 437 of the government code. *See* TEX. GOV'T CODE ANN. § 437.001–.419 (West, Westlaw through 2017 1st C.S.) (entitled "Texas Military"). Under section 437.202 of that chapter, a state employee who is a member of "a reserve component of the armed forces" and is ordered to duty "is entitled, when relieved from duty, to be restored to the position that the employee held when ordered to duty." *Id.* § 437.202(d). Section 437.204, entitled "Reemployment of Service Member Called to Training or Duty," provides that "[a]n employer may not terminate the employment of an employee who is a member of the state military forces of this state or any other state because the employee is ordered to

15

authorized training or duty by a proper authority" and that "[t]he employee is entitled to return to the same employment held when ordered to training or duty . . . ." *Id.* § 437.204(a).[8]  Section 437.402 states that "[a] person claiming to be aggrieved by an unlawful employment practice under Section 437.204 or the person's agent may file a complaint" with the Texas Workforce Commission (TWC).  *Id.* § 437.402(a).  If the TWC dismisses the complaint or fails to resolve it, the complainant is entitled to request a notice of the complainant's right to file a civil action.  *Id.* § 437.411(a).  The complainant may then bring a civil action against the employer within sixty days after receiving that notice. *Id.* § 437.412.  On finding that an employer engaged in an "intentional unlawful employment practice" under section 437.204, a court may award compensatory and punitive damages, but it may not award back pay.  *Id.* § 437.416(a), (c).

Torres contends that government code chapter 437 is similar to statutes in New Mexico and Wisconsin which have been held, by courts in those states, to evince a legislative intent to waive sovereign immunity for USERRA claims.  *See Ramirez v. State of N.M. Children, Youth & Families Dep't*, 372 P.3d 497 (N.M. 2016); *Scocos v. State of Wis. Dep't of Veteran Affairs*, 819 N.W.2d 360 (Wis. App. 2012).  But, as DPS notes, the statutes involved in those cases are distinguishable because they explicitly refer to USERRA or to federal law generally.  *See Ramirez*, 372 P.3d at 505 (construing N.M. STAT. ANN. § 20-4-7.1 (West, Westlaw through 2018 2nd R.S.) ("The rights, benefits and

---

[8] Torres was not a member of "the state military forces of this state or any other state."  *See* TEX. GOV'T CODE ANN. § 437.204(a) (West, Westlaw through 2017 1st C.S.).  However, "service member" is defined as "a member or former member of the state military forces or a component of the United States armed forces, including a reserve component."  *Id.* § 437.001(8) (West, Westlaw through 2017 1st C.S.). In any event, we need not determine whether Torres, as a United States Army reservist, was eligible to sue under chapter 437 because of our conclusion herein that he did not exhaust administrative remedies with regard to any such claim.

16

protections of [USERRA] shall apply to a member of the national guard ordered to federal or state active duty for a period of thirty or more consecutive days.")); *Scocos*, 819 N.W.2d at 366 (construing WIS. STAT. ANN. § 321.64(2) (West, Westlaw through 2017 Act 367) (providing that the discharge of persons restored to state employment after military service is "subject to all federal . . . laws")).

We need not determine whether the New Mexico and Wisconsin statutes are analogous to government code chapter 437 because, to the extent chapter 437 waives sovereign immunity, it does so only in cases in which the administrative process has been exhausted as set forth in the chapter. *See* TEX. GOV'T CODE ANN. § 311.034 ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."). There is no dispute that Torres has not exhausted his administrative remedies with respect to his claims against DPS. Accordingly, assuming but not deciding that section 437.412 clearly and unambiguously waives sovereign immunity for certain claims, Torres has not alleged facts showing that the trial court had jurisdiction over his claims in particular. *See id.* § 311.034; *Tex. Ass'n of Bus.*, 852 S.W.2d at 446.[9]

---

[9] As the dissent notes, Texas Government Code chapter 613, entitled "Reemployment Following Military Service," explicitly provides that a State employee who leaves to enter active military service and is later discharged from service "is entitled to be reemployed" in the same position or "a position of similar seniority, status, and pay" at the same State agency. TEX. GOV'T CODE ANN. § 613.002(a) (West, Westlaw through 2017 1st C.S.). If the employee sustained a disability during military service that prevents the employee from performing the duties of such a position, the employee is entitled to be reemployed "in a position that the employee can perform and has: (1) like seniority, status, and pay as the former position; or (2) the nearest possible seniority, status, and pay to the former position." *Id.* § 613.003 (West, Westlaw through 2017 1st C.S.).

Torres does not contend that section 613.021 waives DPS's immunity to USERRA claims in state court; in fact, the record contains no references to chapter 613 by any party, and it is not mentioned on appeal. In any event, this statute does not clearly and unambiguously waive DPS's immunity to his specific claims. That is because, to the extent chapter 613 waives immunity, it does so only for suits seeking to compel "a public official to comply with" the provisions of the chapter—it does not authorize the recovery of monetary damages. *See id.* § 613.021(a) (West, Westlaw through 2017 1st C.S.). Torres's petition did not seek an order compelling DPS to restore his employment; rather, it sought only a declaration that DPS's

17

### III. CONCLUSION

For the reasons set forth herein, DPS's immunity to Torres's suit has not been validly abrogated by Congress or waived by the Texas Legislature.[10]  Accordingly, we reverse the trial court's judgment and render judgment granting DPS's plea to the jurisdiction.

DORI CONTRERAS
Justice

Dissenting Opinion by
Justice Benavides.

Delivered and filed the 20th
day of November, 2018.

---

actions were unlawful, a judgment for "compensatory and/or liquidated damages," and attorney's fees and costs.  Those remedies are not recoverable under chapter 613.  *See id.*  It follows that sovereign immunity is not waived for a suit seeking those remedies.  *See Zachry Const. Corp. v. Port of Hous. Auth. of Harris Cty.*, 449 S.W.3d 98, 110 (Tex. 2014) (holding that chapter 271 of the Texas Local Government Code "does not waive immunity from suit on a claim for damages not recoverable" under that statute); *Tooke v. City of Mexia*, 197 S.W.3d 325, 346 (Tex. 2006) (same).

[10] The dissent argues that our ruling leaves our armed forces with "no remedy in state courts when they have faced employment discrimination from a state agency due to their service to our country." Respectfully, that is incorrect.  State military forces may sue under chapter 437, provided that administrative remedies are exhausted.  *See* TEX. GOV'T CODE ANN. § 613.021(a).  And as the dissent seems to acknowledge, a state employee claiming employment discrimination due to federal military service may sue, notwithstanding sovereign immunity, under Texas Government Code chapter 613.  *See* TEX. GOV'T CODE ANN. § 613.021(a).  Had Torres sued under this statute and proved his case, he would have been entitled to an order compelling DPS to reemploy him, despite his disability, "in a position that [he] can perform and has:  (1) like seniority, status, and pay as the former position; or (2) the nearest possible seniority, status, and pay to the former position."  *Id.* § 613.003.

To the extent the precise remedy sought by Torres—i.e., monetary damages—is unavailable to him, it is not this Court that is depriving him of that option.  Rather, the Texas Legislature has chosen not to waive immunity for that remedy.