# IN THE COURT OF APPEALS OF IOWA

No. 23-0361
Filed September 18, 2024

**JOY TRUEBLOOD, M.D.,**
    Plaintiff-Appellant/Cross-Appellee,

**vs.**

**MMIC INSURANCE, INC.,**
    Defendant-Appellee/Cross-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Samantha Gronewald, Judge.

A tort plaintiff appeals from the summary judgment ruling dismissing her lawsuit as precluded by a Minnesota judgment under the Full Faith and Credit Clause, and the defendant cross-appeals the denial of sanctions against plaintiff's counsel. **AFFIRMED ON APPEAL AND CROSS-APPEAL**.

Webb L. Wassmer of Wassmer Law Office PLC, Marion, and Nicholas C. Rowley and Dominic F. Pechota of Trial Lawyers for Justice, Decorah, for appellant/cross-appellee.

Charles E. Spevacek (pro hac vice) of Meagher & Geer, P.L.L.P., Minneapolis, Minnesota, and Jason Wallace Miller and Gregory Andrew Witke of Patterson Law Firm, LLP, Des Moines, for appellee/cross-appellant.

Heard by Schumacher, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

After losing a tort lawsuit in Minnesota, can the plaintiff bring an identical suit—the same tort claims, against the same defendants, arising out of the same facts—in Iowa? The district court said no, reasoning that the Full Faith and Credit Clause of our nation's constitution requires Iowa to abide by Minnesota's resolution of the suit. And the twice-losing plaintiff—Dr. Joy Trueblood—appeals. She contends that because the Minnesota court chose to apply Minnesota common law rather than more favorable Iowa common law, she should get a chance to pursue her claims under Iowa law. One of the repeat defendants—MMIC Insurance, Inc.—cross-appeals, arguing that the district court abused its discretion in refusing to sanction Trueblood's attorney—Nicholas Rowley—for filing this second suit because it is frivolous and brought for an improper purpose.

The district court correctly dismissed this suit. The Minnesota judgment is a final decision on the merits reached after Trueblood had a full and fair opportunity to litigate her claims, including her argument that Iowa law should apply. The Full Faith and Credit Clause thus demands that we give our sister state's judgment preclusive effect, foreclosing Trueblood's second try at suing MMIC.

Even so, we cannot say that the district court abused its discretion in declining to sanction Rowley for suing MMIC a second time. Especially given that the district court *did* sanction Rowley for again suing one of the other defendants that had been voluntarily dismissed with prejudice in the Minnesota suit, it was not untenable reasoning to conclude that the limited sanction was sufficient. We thus affirm on both the appeal and cross-appeal.

## I.     Factual Background and Proceedings

In 2016, a patient went to a medical clinic for prostate cancer screening. A mix-up in the pathology lab caused the patient to receive another patient's biopsy results—results that showed prostate cancer. Believing he had cancer, the patient underwent prostate-removal surgery. After the surgery, the clinic discovered the error. The patient and his wife then sued the clinic for medical malpractice and later added Trueblood—the clinic's pathologist—as a named defendant. MMIC, the insurance provider for the clinic and Trueblood, indemnified them and hired counsel to defend the suit.

The parties to that suit engaged in mediation and appeared close to reaching a settlement agreement on the patient's malpractice claims. But just before trial, the patient and his wife rescinded their $1.9 million demand. They also retained new counsel—Rowley appeared the morning of trial and demanded $7 million to settle the case, which he then upped to $15 million four hours later. After a short trial, the jury found Trueblood and the clinic negligent and awarded $12.5 million in damages. The case later settled for $9 million—all of which was covered by the MMIC insurance policy. Neither Trueblood nor the clinic ever paid out of pocket for the award or the lawsuit's defense.

About ten months after the verdict, Trueblood—by then, also represented by the patient's attorney, Rowley—sued MMIC and one of its claims employees, Nicole Graziano, in Minnesota state district court. The suit asserted three common-law tort claims—bad faith, breach of fiduciary duty, and intentional infliction of emotional distress—all arising out of MMIC's defense of the patient's medical malpractice case. The thrust of the suit was that MMIC made "insultingly

low" settlement offers, "pressured" Trueblood to take the blame for the lab error in her deposition, and could have avoided trial by making larger settlement offers.

Trueblood eventually agreed to a stipulated dismissal of her claims against the MMIC employee, Graziano. One of Rowley's co-counsels also representing Trueblood initially asked for the dismissal to be without prejudice, writing, "We are not going to later pursue the claims but dismissal with prejudice can lead to unintended consequences down the road." MMIC refused. And Rowley then relented, signing a stipulated dismissal agreeing to dismissal "with prejudice," which the Minnesota district court accepted.

The remaining claims against MMIC were considered by the court on MMIC's motion to dismiss.[1] The fighting issue was whether Minnesota or Iowa law governed Trueblood's torts. Trueblood argued Iowa law should apply because the medical malpractice occurred in Iowa. And MMIC argued Minnesota law should govern because all of MMIC's litigation decisions occurred in Minnesota. The choice-of-law issue was significant. While Minnesota law narrowly cabins tort claims against insurers—requiring they be litigated through breach-of-contract actions with few exceptions—Iowa law allows such claims in more circumstances. *Compare Morris v. Am. Fam. Mut. Ins. Co.*, 386 N.W.2d 233, 237 (Minn. 1986), *with Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005).

The Minnesota district court held that Minnesota law applied to Trueblood's suit and that Trueblood failed to state a claim upon which relief could be granted.

---

[1] MMIC originally filed the motion as one for summary judgment so it could present evidence about another defendant that was named in Trueblood's suit before being dismissed by stipulation. And because no evidence was needed for the arguments on the claims against MMIC, the court treated the motion as a motion to dismiss.

The court reasoned that because Trueblood's action turned on MMIC's contractual performance under its policy—not any intentional tort committed apart from its malpractice defense—Trueblood could not prevail on any of her claims against MMIC. So the court dismissed them with prejudice.

Trueblood appealed to the Minnesota Court of Appeals, which affirmed. *See Trueblood v. MMIC Ins.*, No. A21-0452, 2021 WL 5764582 (Minn. Ct. App. Dec. 6, 2021). The court acknowledged both "parties agree that either state's law may be constitutionally applied, as both states have sufficient contacts with this case," and "[b]oth parties also agree that Minnesota's choice-of-law rules apply here." *Id.* at *2. Applying Minnesota's choice-of-law rules, the court found that the conduct giving rise to the suit occurred in Minnesota; Minnesota had a strong interest in applying its own law; and resolving insurance-defense disputes through contract actions, rather than torts, was the "better rule of law." *Id.* at *3–4. So the court held that the district court properly applied Minnesota law. *Id.* at *4. And the court of appeals agreed that under Minnesota law, Trueblood's suit failed to state a claim upon which relief could be granted. *Id.* at *4. Minnesota's tort action could be available when an insurer "refuses to settle within policy limits" and such refusal "is not made in good faith." *Id.* But MMIC settled within the policy limits, so MMIC "did not breach its duty of good faith." *Id.* And so, the Minnesota judgment dismissing Trueblood's claims with prejudice was affirmed. *Id.*

Six months later, Trueblood refiled her suit in Iowa district court. Raising nearly identical factual allegations, Trueblood again sued MMIC and Graziano for bad faith, breach of fiduciary duty, and intentional infliction of emotional distress. MMIC and Graziano quickly moved for summary judgment, arguing the Full Faith

and Credit Clause required Iowa courts to give preclusive effect to Minnesota's with-prejudice dismissal of these claims. They also sought sanctions against Rowley under Iowa Rule of Civil Procedure 1.413(1), arguing the suit showed that Rowley "ignored the obvious lack of legal basis" and Rowley's rhetorically charged, extrajudicial communications to the press and to the Iowa Insurance Commissioner showed Rowley brought it for an improper purpose.

The district court granted summary judgment. Consistent with the demands of the Full Faith and Credit Clause, the court looked to Minnesota law to decide whether the judgment dismissing her first suit would preclude Trueblood from suing again. And it reasoned that all four elements of Minnesota's res judicata framework[2] were satisfied: (1) the claims involved "the same operative facts"; (2) they involved "identical parties"; (3) the dismissals "were adjudications on the merits under Minnesota Law"; and (4) Trueblood "had the opportunity to fully brief and argue her prior Complaint and issues before both the Hennepin County District Court and the Minnesota Court of Appeals." So the district court held that the second suit would be precluded in Minnesota and thus is precluded here too.

As for sanctions, the court found the suit was not frivolous because it was reasonable to "make a colorable argument that res judicata should not apply to the specific facts and circumstances of the case at bar because some of the Minnesota claims were dismissed as not cognizable under Minnesota law but are potentially recognizable under Iowa law." And the court found that Rowley's extrajudicial

---

[2] Minnesota courts use the term "res judicata" to refer to the doctrine Iowa courts would typically call "claim preclusion." *State v. Joseph*, 636 N.W.2d 322, 326 n.1 (Minn. 2001); *see Pavone v. Kirke*, 807 N.W.2d 828, 835 (Iowa 2011).

communications did not show an improper purpose under rule 1.413(1) because that rule is designed to prevent filings that would "delay court proceedings and waste limited judicial resources" rather than to "wade into the fray of tactics counsel may choose to engage in, whether warranted or exaggerated, outside of the courthouse and realm of formal litigation proceedings." So the court denied sanctions entirely at first.

But after Graziano moved to reconsider, the court agreed that its original reasoning did not apply to Rowley's "misconduct toward her." The court instead held that it was unreasonable for Rowley to bring the claims against Graziano a second time when "he was aware that [Trueblood] had dismissed with prejudice nearly identical claims against Ms. Graziano in Minnesota." And so, the court ordered Rowley to pay $14,438.10 to compensate Graziano for her attorney fees. Rowley complied and does not challenge the sanction imposed.

Trueblood now appeals the dismissal of her second suit on summary judgment. And MMIC cross-appeals its sanctions denial.

## II.    Full Faith and Credit

Our nation's constitution requires that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const. art. IV, § 1. This Full Faith and Credit Clause altered the prior "status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others." *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 223 (1998) (cleaned up). And through it, "an aggregation of independent, sovereign States" was transformed "into a nation." *Id.* at 234 (cleaned up).

Under the Full Faith and Credit Clause, "the courts of each state" must "give a judgment of another state the same preclusive effect as it has in the state in which it was rendered." *Edward Rose Bldg. Co. v. Cascade Lumber Co.*, 621 N.W.2d 193, 195 (Iowa 2001). So "the doctrines of res judicata and collateral estoppel" are "compulsory as between the States." *Nat'l Equip. Rental, Ltd. v. Estherville Ford, Inc.*, 313 N.W.2d 538, 541 (Iowa 1981) (citing *Durfee v. Duke*, 375 U.S. 106, 109 (1963)).

Our mandate to enforce a final state court judgment is "exacting" when the state had jurisdiction over the parties and subject matter. *Baker*, 522 U.S. at 233. Thus, for purposes of res judicata, "the judgment of the rendering State gains nationwide force." *Id.* The honoring state may not "inquir[e] into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based." *V.L. v. E.L.*, 577 U.S. 404, 407 (2016) (cleaned up). Nor may a state "refuse to honor a sister state judgment based on the forum's choice of law or policy preferences." *Baker*, 522 U.S. at 239.

To determine whether a sister state judgment is entitled to preclusive effect, we look to "the law of the state in which it was rendered." *Nat'l Equip.*, 313 N.W.2d at 541. So we apply Minnesota law to decide whether res judicata bars Trueblood's second suit against MMIC. *See Tri-State Refin. & Inv. Co. v. Opdahl*, 481 N.W.2d 710, 713 (Iowa Ct. App. 1991) ("[W]e must give the previous [Minnesota] decisions the same preclusive effect they are given in [Minnesota]."); *see also* Restatement (Second) of Conflict of Laws § 95 (Am. L. Inst. 1971).

Four elements dictate whether "[t]he doctrine of res judicata prevents either party in an action from relitigating claims arising from the original circumstances,

even under new legal theories." *Aaron Carlson Corp. v. Cohen*, 933 N.W.2d 63, 72 (Minn. 2019) (cleaned up). First, "the earlier claim involved the same set of factual circumstances." *Id.* Second, "the earlier claim involved the same parties or their privies." *Id.* Third, "there was a final judgment on the merits." And fourth, the "estopped party had a full and fair opportunity to litigate the matter." *Id.*

These are all legal questions, properly resolved at summary judgment. *See Mach v. Wells Concrete Prods. Co.*, 866 N.W.2d 921, 925 (Minn. 2015); *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 36 (Iowa 2018). And we review the district court's grant of summary judgment for correction of errors at law. *Bandstra*, 913 N.W.2d at 36.

The parties do not dispute the first two elements of Minnesota's res judicata framework. Indeed, Trueblood brought the same three common-law claims, against the same defendants, alleging nearly identical facts, in both suits. So Trueblood's second suit involves the same facts and parties.

The third element—whether the Minnesota case ended with a final adjudication on the merits—also poses no difficulty. When a complaint fails to state a claim upon which relief can be granted, the "complaint should be dismissed with prejudice." *Martens v. Minn. Min. & Mfg. Co.*, 616 N.W.2d 732, 748 (Minn. 2000). And that dismissal constitutes an adjudication on the merits. *Id.*; *see also State v. Joseph*, 636 N.W.2d 322, 328 (Minn. 2001) (giving a judgment entered after grant of motion to dismiss preclusive effect and rejecting argument that it was not on the merits because motion had been based on a statute-of-limitations defense). The Minnesota Rules of Civil Procedure also say as much— an involuntary dismissal "operates as an adjudication upon the merits," unless the

dismissal was "for lack of jurisdiction, for forum non conveniens, or for failure to join a party indispensable." Minn. R. Civ. P. 41.02(c); *see also Joseph*, 636 N.W.2d at 328. Because Trueblood's complaint failed to state a claim against MMIC and was thus dismissed with prejudice, Trueblood's suit was adjudicated on the merits under Minnesota law.

Trueblood sidesteps these binding authorities and instead argues—based on cases from the 1860s and 1920s—that a pleadings-stage dismissal could never support res judicata in Minnesota. *See Gerrish v. Pratt*, 6 Minn. 53 (1861); *Fox v. Fox.*, 191 N.W. 420 (Minn. 1923); *Ross v. Amiret Farmers' Elev. Co.*, 226 N.W. 417 (Minn. 1929). But Trueblood overlooks that these old cases have not been relied on by Minnesota courts for such a narrow view of res judicata for decades. In part, the confusion arises because the older cases lumped together the doctrines of res judicata and collateral estoppel, referring to both as res judicata even though each now has distinct requirements. *See Joseph*, 636 N.W.2d at 326 n.1. But also, Minnesota's modern res judicata law is "broader than traditional notions of res judicata" because of changes to its rules of civil procedure. *Anderson v. Warner Cont'l, Inc.*, 363 N.W.2d 332, 334 (Minn. Ct. App. 1985); *see also Sundberg v. Abbott*, 423 N.W.2d 686, 690 (Minn. Ct. App. 1988) (reversing district court for mistakenly relying on *Ross* because it was undermined by "[m]odern rules of pleading"); *Joseph*, 636 N.W.2d at 328 (looking to modern rules defining when dismissals are on the merits). So the district court correctly applied current Minnesota res judicata law.

Trueblood also points to a federal case to argue that res judicata "does not apply" if "the second State's adjudication of a claim does not require inconsistent

findings as to factual matters decided in the first State's action." But that is neither the law in Minnesota nor an accurate representation of the federal case, *Thomas v. Washington Gas Light Co.*, 448 U.S. 261 (1980). In *Thomas*, a plurality of the Court discussed the limits of full faith and credit in the workers' compensation context. *Thomas*, 448 U.S. at 282–83. Unlike state courts of general jurisdiction, state administrative agencies may implement only their own state's laws—not those of another state. *Id.* at 282. So a workers' compensation petitioner could seek successive awards—first in Virginia, then a supplemental award from the District of Columbia—because the Virginia commissioner "had no authority[] to pass on petitioner's rights under District of Columbia law." *Id.* at 283. But here, the Minnesota district court could have applied either Iowa or Minnesota law to Trueblood's suit. It had jurisdiction over her common-law claims and had the authority to set "the measure of [Trueblood's] rights but also the limits of [MMIC's] liability." *Id.* at 282. Nothing in *Thomas* requires, or even suggests, that we disregard Minnesota's res judicata framework merely because there is no risk of inconsistent factfinding.

Turning to the fourth element, we agree that Trueblood fully and fairly litigated her tort claims in the Minnesota suit. On this point, Trueblood first argues that when the Minnesota courts held that Minnesota law applied to her common-law claims, she was prevented from litigating them. But Trueblood conflates substance with procedure. *See Joseph*, 636 N.W.2d at 329 (noting this element "focuses on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or

whether effective litigation was limited by the nature or relationship of the parties" (cleaned up)).

Far from being barred or discouraged from litigating her claims, Trueblood had every opportunity to—and did—fully litigate them in Minnesota. The Minnesota court—where Trueblood chose to file—had personal and subject matter jurisdiction. There, she pursued her common-law claims under Iowa law by urging that the court should apply Iowa law to adjudicate them. And the court had the authority to apply Iowa law if it decided that doing so was proper for this case under Minnesota's choice-of-law rules. *See Thomas*, 448 U.S. at 282 (noting a state court "is free to recognize the perhaps paramount interests of another State by choosing to apply that State's law in a particular case"); *Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 469–70 (Minn. 1994). When she lost in the district court, she appealed to the court of appeals, where she again had the opportunity to argue for Iowa law to apply. Trueblood thus faced no procedural, incentive, or relational barriers to litigating her claims. She was just unsuccessful on the merits.

So this case does not resemble Trueblood's chief authority on appeal— *Breaker v. Bemidji State University*, 899 N.W.2d 515 (Minn. Ct. App. 2017). There, a state employee was called into active military service and his employer did not make his original position available upon his return. *Breaker*, 899 N.W.2d at 517–18. The employee sued, but at that time, the state retained sovereign immunity over USERRA[3] claims. *Id.* at 518. So he only brought a tort claim, which was

---

[3] The Uniformed Services Employment and Reemployment Rights Act protects military servicemembers' employment and requires they be reemployed upon returning from service. *See* 38 U.S.C. §§ 4301–4335.

dismissed. *Id.* Later, the Minnesota legislature statutorily waived its immunity from USERRA claims, and the employee filed a second suit, bringing USERRA claims against the state. *Id.* The employee's second suit was not barred by res judicata because he could not have raised the USERRA claims at the time of his original suit. *Id.* at 519.

But here, Trueblood faced no formal barriers to filing her common-law claims in Minnesota. And she knew at the time of filing that the court would choose which state's law to apply to her torts. Indeed, if she had chosen to file her lawsuit in Iowa, an Iowa court would have been faced with the same preliminary choice-of-law question.[4] So rather than seeking to proceed through a newly opened Minnesota door as in *Breaker*, Trueblood essentially asks us to let her have another try at an Iowa backdoor in the hopes that we may give her a different answer to the choice-of-law question.

Agreeing with Trueblood would flout Minnesota's res judicata law. Her disagreement with the Minnesota court's choice-of-law decision is not a basis to avoid the preclusive effect of the judgment. *See Joseph*, 636 N.W.2d at 329 ("[A] litigant's disagreement with a legal ruling does not necessarily mean that the court denied the litigant a full and fair opportunity to litigate a matter."). Indeed, res judicata principles—and the Full Faith and Credit Clause—exist to head off

---

[4] It matters not whether an Iowa court applying Iowa choice-of-law rules would have reached the same conclusion. *Compare Jepson*, 513 N.W.2d at 469–70, *with Veasley v. CRST Int'l, Inc.*, 553 N.W.2d 896, 897–99 (Iowa 1996). Trueblood chose her forum to file this suit. And she thus chose the choice-of-law rules that would apply to her suit as well. So Trueblood cannot complain that this is the rare case where the original state judgment was an improper attempt to interfere with this Iowa proceeding or manipulate the law to be applied. *See Wamsley v. Nodak Mut. Ins. Co.*, 178 P.3d 102, 115–16 (Mont. 2008).

precisely these situations, where a loser in one forum hauls the winner to another forum to do it all again. *See, e.g.*, *Smith v. Shelter Mut. Ins.*, 867 P.2d 1260, 1266 n.20 (Okla. 1994) (barring second suit in Oklahoma after first litigating policy coverage in Arkansas, despite the second suit purportedly being under Oklahoma law, because "the issue of which state's law applies has been litigated" and "[w]hether the Arkansas court correctly decided which law applied is inconsequential"); *R.S. v. PacifiCare Life & Health Ins.*, 128 Cal. Rptr. 3d 1, 12 (Cal. Ct. App. 2011) (barring second suit in California after first litigating in Missouri, despite second suit bringing an insurance tort claim not cognizable under Missouri law, because there is no "public-policy exception to the full faith and credit clause" and "California must, regardless of policy objections, recognize the judgment of another state as res judicata" (cleaned up)).

Trueblood also points to several sections of the Second Restatement of Judgments to argue she was kept from litigating her tort claims. But as she does with substance and procedure, Trueblood misses the distinction between substance and jurisdiction. Each Restatement section turns on whether the first court had jurisdiction to hear the new claims filed in the second suit. *See* Restatement (Second) of Judgments § 26(1)(c) (Am. L. Inst. 1982) (allowing a new claim when "the limitations on the subject matter jurisdiction" or "restrictions" on a court's "authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action" kept the plaintiff from bringing the claim initially); *id.* § 26 cmt. c. (discussing when a court's lack of jurisdiction precluded bringing a claim or if a court refused to combine law and equity); *id.* § 25 cmt. e (precluding bringing new claims when there was "no jurisdictional obstacle" to advancing them

in the prior suit).  Yet here, Minnesota had jurisdiction over her common-law claims and could have applied Iowa law.  So again, Trueblood faced no technical or formal barriers to presenting her claims.  She fully and fairly litigated them in the first suit.

With all four of Minnesota's res judicata elements satisfied, the Full Faith and Credit Clause demands we give preclusive effect to the Minnesota judgment.  The district court thus made no errors at law in dismissing Trueblood's suit on that basis.  And so, we affirm its summary judgment ruling.

### III.    Sanctions under Rule 1.413

In the district court, MMIC and Graziano jointly moved for sanctions against Rowley—each asking for attorney fees for defending a baseless second suit.  *See* Iowa R. Civ. P. 1.413(1) (authorizing sanctions if pleadings are not "to the best of counsel's knowledge, information, and belief, formed after reasonable inquiry . . . warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law" or if they are made "for any improper purpose, such as to harass").  Rowley was ordered to pay Graziano's attorney fees but not MMIC's fees.  On appeal, MMIC renews its position that this second suit was frivolous and filed for an improper purpose and that Rowley's conduct requires deterrence.

We will only disturb a district court's sanctions order if the court abused its discretion.  *Rowedder v. Anderson*, 814 N.W.2d 585, 589 (Iowa 2012).  To that end, we must let the decision stand unless the appellant shows the ruling was clearly unreasonable or untenable.  *Id.*  MMIC does not clear this high bar.

To begin, MMIC highlights that Rowley now represents Trueblood despite being opposing counsel in the underlying medical malpractice case and suggests it is an apparent conflict of interest.  The Minnesota Court of Appeals also flagged

this irregularity, "express[ing] concern regarding [Rowley's] seemingly incongruous representation." *See Trueblood*, 2021 WL 5764582, at *1 n.1. While we share that concern, MMIC never moved to disqualify Rowley. Nor do we read its request for sanctions at the district court to allege an attorney conflict. So this issue is not before us, and we do not decide whether Rowley's representation of Trueblood complies with his ethical obligations as an Iowa lawyer.

Turning to sanctions under rule 1.413(1), when deciding to impose a fee-shifting sanction, the court should consider "the time available to investigate and research facts, the complexity of factual and legal issues, the clarity or ambiguity of existing law, and the plausibility of the legal positions asserted," among other factors. *In re Est. of Bisignano*, 991 N.W.2d 135, 142 (Iowa 2023); *see also Barnhill v. Iowa Dist. Ct.*, 765 N.W.2d 267, 273 (Iowa 2009). The district court found that refiling against MMIC was not so facially implausible that no reasonable attorney would have signed the pleadings, particularly given the choice-of-law issue. But it also found that Rowley should be sanctioned for suing Graziano again, as claims against her were voluntarily dismissed "with prejudice" during the first suit. So the court sanctioned Rowley for his "highly inappropriate" conduct with Graziano but did not go so far as sanctioning Rowley for the entire suit. We cannot say this reasoning is clearly untenable. Not every argument that lacks merit is frivolous under rule 1.413(1). And so, the district court's ruling denying MMIC's requested sanctions is also affirmed.

**AFFIRMED ON APPEAL AND CROSS-APPEAL.**